**COMMONWEALTH of Pennsylvania, DEPARTMENT OF HEALTH, Petitioner**

**v.**

**D. Bruce HANES, in his capacity as the Clerk of the Orphans' Court of Montgomery County, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 4, 2013.

Decided Sept. 12, 2013.

Gregory E. Dunlap, Assistant Counsel, Harrisburg, for petitioner.

Raymond McGarry, County Solicitor, Norristown, for respondent.

Robert C. Heim, Philadelphia, for intervenors.

OPINION BY President Judge PELLEGRINI.

Before the Court is the Department of Health's (Department) Amended Application for Summary Relief pursuant to Pa. R.A.P. 1532(b) [1] (Application) for peremp-

1. Pa. R.A.P. 1532(b) states, in relevant part: **(b) Summary relief.** At any time after the filing of a petition for review in an ... original jurisdiction matter the court may on application enter judgment if the right of the applicant ... is clear.

tory judgment with respect to its Amended Petition for Review in the Nature of an Action in Mandamus (Petition). For the reasons that follow, we grant the Application and the mandamus relief sought in the Petition.

## I.

### A.

On June 26, 2013, in a case involving the marital exemption from the federal estate tax under Section 2056(a) of the Internal Revenue Code, 26 U.S.C. § 2056(a), the United States Supreme Court held that the federal Defense of Marriage Act's definition of "marriage" as only a legal union between a man and a woman, and the definition of "spouse" as only a person of the opposite sex who was a husband or wife found in 1 U.S.C. § 7, were unconstitutional as a deprivation of the liberty of the person protected by the Fifth Amendment to the United States Constitution. *See United States v. Windsor*, —— U.S. ——, ——, 133 S.Ct. 2675, 2693–2696, 186 L.Ed.2d 808 (2013). Nevertheless, as the Supreme Court explained:

> [S]tate laws defining and regulating marriage, of course, must respect the constitutional rights of persons; but, subject to those guarantees, "regulation of domestic relations" is "an area that has long been regarded as a virtually exclusive province of the States." ... Consistent with this allocation of authority, the Federal Government, through our history, has deferred to state-law policy decisions with respect to domestic relations ... The significance of state responsibilities for the definition and regulation of marriage dates to the Nation's beginning; for "when the Constitution was adopted the common understanding was that the domestic relations of husband and wife and parent and child were matters reserved to the States."

*Id.* at ——, 133 S.Ct. at 2691.[2] Because the regulation of marriage is a matter for

---

*Note:* [S]ubdivision (b) authorizes immediate disposition of a petition for review, similar to the type of relief envisioned by the Pennsylvania Rules of Civil Procedure regarding judgment on the pleadings and peremptory and summary judgment. However, such relief may be requested before the pleadings are closed where the right of the applicant is clear.

An application for summary relief filed under Pa. R.A.P. 1532(b) is generally the same as a motion for peremptory judgment filed in a mandamus action in the common pleas court. *Barge v. Pennsylvania Board of Probation and Parole*, 39 A.3d 530, 550 (Pa.Cmwlth.2012). The application will be granted where the right to such relief is clear, but will be denied where there are material issues of fact in dispute or if it is not clear the applicant is entitled to judgment as a matter of law. *Id.*

**2.** With respect to statutes regarding marriage in Pennsylvania, the Pennsylvania Supreme Court has explained:

> The law for certain purposes regards marriage as initiated by a civil contract, yet it is but a ceremonial ushering in a fundamental institution of the state. The relation itself is founded in nature, and like other natural rights of persons, becomes a subject of regulation for the good of society. The social fabric is reared upon it, for without properly regulated marriage, the welfare, order and happiness of the state cannot be maintained. Where the greater interests of the state demand it, marriage may be prohibited; for instance, within certain degrees of consanguinity, as deleterious to the offspring and to morals. For the same reason the law may dissolve it, and as a question of power, there is no difference whether this be done by a general or a special law. *Cronise v. Cronise*, 54 Pa. 255, 262 (1867); *see also Bacchetta v. Bacchetta*, 498 Pa. 227, 232–33, 445 A.2d 1194, 1197 (1982) (" 'Marriage, as creating the most important relation in life, as having more to do with the morals and civilization of a people than any other institution, has always been subject to the control of the legislature. That body prescribes the age at which parties may contract to marry, the

the states, the Supreme Court found that a federal definition of marriage that creates "two contradictory marriage regimes within the same State" must fall. *Id.* at ——, 133 S.Ct. at 2694. Congress "interfered" with "state sovereign choices" about who may be married by creating its own definition, relegating one set of marriages—same-sex marriages—to the "second-tier," making them "unequal." *Id.*

## B.

Seeking a declaration that the prohibition of same sex marriages in Pennsylvania was unconstitutional, on July 9, 2013, the American Civil Liberties Union of Pennsylvania filed a federal civil rights lawsuit on behalf of a number of same-sex couples against several Commonwealth officials including the Governor; the Department's Secretary; the Attorney General; the Register of Wills of Washington County; and the Register of Wills and Clerk of Orphans' Court of Bucks County. *See Whitewood v. Corbett* (No. 13–1861) (M.D.Pa.). The lawsuit challenges the constitutionality of Section 1102 of the

Marriage Law, 23 Pa.C.S. § 1102, which defines "marriage" as "[a] civil contract by which one man and one woman take each other for husband and wife," and Section 1704, 23 Pa.C.S. § 1704, which provides:

It is hereby declared to be the strong and longstanding public policy of this Commonwealth that marriage shall be between one man and one woman. A marriage between persons of the same sex which was entered into in another state or foreign jurisdiction, even if valid where entered into, shall be void in this Commonwealth.

The complaint alleges that the foregoing provisions violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.[3]

On July 11, 2013, the Attorney General issued a press release announcing that her office would not defend the provisions of the Marriage Law challenged in *Whitewood* because she deemed them to be "wholly unconstitutional" and that it was her duty under the Commonwealth Attorneys Act[4] to authorize the Office of Gener-

procedure or form essential to constitute marriage, the duties and obligations it creates, its effects upon the property rights of both, present and prospective, and the acts which may constitute grounds for its dissolution.' ") (citation omitted); *In re Stull's Estate,* 183 Pa. 625, 629–30, 39 A. 16, 17 (1898) (holding that the validity of a marriage is determined by the law of the place where it was celebrated and if it is invalid there, it is invalid everywhere).

3. U.S. Const. amend. XIV, § 1. Section 1 states, in pertinent part, "[n]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

4. Act of October 14, 1980, P.L. 950, *as amended,* 71 P.S. §§ 732–101–732–506. Article 4, Section 4.1 of the Pennsylvania Constitution states, in pertinent part:

An Attorney General ... shall be the chief law officer of the Commonwealth and shall

exercise such powers and perform such duties as may be imposed by law.
Pa. Const. art. IV, § 4.1.

In turn, Section 204 of the Commonwealth Attorneys Act provides, in pertinent part:

(a) Legal advice.—

(1) Upon the request of the Governor or the head of any Commonwealth agency, the Attorney General shall furnish legal advice concerning any matter or issue arising in connection with the exercise of the official powers or performance of the official duties of the Governor or agency. The Governor may request the advice of the Attorney General concerning the constitutionality of legislation presented to him for approval in order to aid him in the exercise of his approval and veto powers and the advice, if given, shall not be binding on the Governor. ...

\* \* \*

(3) It shall be the duty of the Attorney General to uphold and defend the constitu-

al Counsel[5] to defend the State in the litigation. *See* Press Release, Office of Attorney General, Attorney General Kane will not defend DOMA (July 11, 2013), http://www.attorneygeneral.gov/press. aspx?id=7043. On July 23, 2013, D. Bruce Hanes (Hanes), Clerk of the Orphans' Court of Montgomery County, issued a press release announcing that he had "decided to come down on the right side of history and the law" and was prepared to issue a marriage license to a same-sex couple based upon the advice of his solicitor, his analysis of the law, and the Attorney General's belief that the Marriage Law is unconstitutional. *See http://main linemedianews.com/articles/2013/07/23/*

*mainlinetimes/news/doc51eecae35360b 015385105.txt.*

**C.**

On August 5, 2013, the Department filed the instant Petition and Application, seeking a writ of mandamus to compel Hanes, in his official capacity as Clerk of the Orphans' Court of Montgomery County, to perform his duties as established by Section 2774(a) of the Judicial Code, 42 Pa. C.S. 2774(a)[6] and accordingly comply with all provisions of the Marriage Law. The Department contends that this Court has jurisdiction over the action pursuant to Section 761(a)(1) and (2) of the Judicial

---

tionality of all statutes so as to prevent their suspension or abrogation in the absence of a controlling decision by a court of competent jurisdiction.

\* \* \*

(c) **Civil litigation; collection of debts.—** The Attorney General ... may, upon determining that it is more efficient or otherwise in the best interest of the Commonwealth, authorize the General Counsel or the counsel for an independent agency to initiate, conduct or defend any particular litigation or category of litigation in his stead....

71 P.S. § 732–204(a)(1), (3), (c).

5. Section 301 of the Commonwealth Attorneys Act states, in pertinent part:

There is hereby established the Office of General Counsel which shall be headed by a General Counsel appointed by the Governor to serve at his pleasure who shall be the legal advisor to the Governor and who shall:

(1) [A]ppoint for the operation of each executive agency such chief counsel and assistant counsel as are necessary for the operation of each executive agency.

(2) Supervise, coordinate and administer the legal services provided by ... the chief counsel and assistant counsel for each executive agency.

\* \* \*

(6) Initiate appropriate proceedings or defend the Commonwealth or any executive agency when an action or matter has been

referred to the Attorney General and the Attorney General refuses or fails to initiate appropriate proceedings or defend the Commonwealth or executive agency.

71 P.S. § 732–301(1), (2), (6). In turn, Section 102 defines "executive agency," in pertinent part, as "[t]he departments ... of the Commonwealth government...." 71 P.S. § 732–102.

6. Section 2774(a) states, in pertinent part:

(a) **General rule.—**There shall be an office of the clerk of the orphans' court division in each county of this Commonwealth, which shall be supervised by the clerk of the orphans' court division of the county who shall ... exercise the powers, and perform the duties by law vested in and imposed upon the clerk of the orphans' court division or the office of the clerk of the orphans' court division.

*See also* Section 15 of the Schedule to Article 5 of the Pennsylvania Constitution, Pa. Const. art. V Sched., § 15 ("Until otherwise provided by law, the offices of prothonotary and clerk of courts shall become the office of prothonotary and clerk of courts of the court of common pleas of the judicial district, ... and the clerk of the orphans' court shall become the clerk of the orphans' court division of the court of common pleas, and these officers shall continue to perform the duties of the office and to maintain and be responsible for the records, books and dockets as heretofore....").

Code, 42 Pa.C.S. § 761(a)(1), (2),[7] because Hanes is a "commonwealth officer."

The Department alleges that it is entitled to mandamus relief because Hanes is repeatedly and continuously acting in derogation of the Marriage Law because, as of August 2, 2013, he has been issuing marriage licenses to same-sex applicants and accepting the marriage certificates of same-sex couples stating that their marriages have been lawfully performed under the Marriage Law. The Department asserts that Hanes' actions violate Sections 1102 and 1704 of the Marriage Law, which limit marriage to opposite-sex couples, and Hanes' duty to perform ministerial duties and that Hanes may not issue marriage licenses to same-sex applicants based on his personal opinion that the law is unconstitutional.[8] It also contends that Hanes may be committing a misdemeanor under Section 411 of the Second Class County

Code[9] for each violation thereof for refusing to carry out his public duty in accordance with the law.

Hanes filed a Response to the Department's Application in which he raised in New Matter that the Application should be denied for the reasons set forth in his Preliminary Objections filed that same day. First, Hanes alleges that he is a "judicial officer" under Section 2777 of the Judicial Code, 42 Pa.C.S. § 2777, and that his issuance of a marriage license is a "judicial act," so that exclusive jurisdiction over the instant mandamus action lies with the Supreme Court under Section 721(2) of the Judicial Code, 42 Pa.C.S. § 721(2), as he is a "court[ ] of inferior jurisdiction,"[10] and this Court does not have jurisdiction to issue a writ of mandamus to a "court of inferior jurisdiction" under Section 761(c), 42 Pa.C.S. § 761(c),[11] in the absence of a pending appeal.[12]

7. Section 761(a)(1) and (2) states that "[t]he Commonwealth Court shall have original jurisdiction of all civil actions or proceedings ... [a]gainst the Commonwealth government, including any officer thereof acting in his official capacity ... [and b]y the Commonwealth government...."

8. The Petition also alleged that Hanes had improperly waived the mandatory three-day waiting period for the issuance of a license under Section 1303(a) of the Marriage Law. 23 Pa.C.S. § 1303(a).

9. Act of July 28, 1953, P.L. 723, *as amended*, 16 P.S. § 3411. Section 411 states, in pertinent part:

If any county officer neglects or refuses to perform any duty imposed on him by the provisions of this act or by the provisions of any other act ..., he shall, for each such neglect or refusal, be guilty of a misdemeanor, and, on conviction thereof, shall be sentenced to pay a fine not exceeding five hundred dollars ($500).

10. Section 721(2) states that "[t]he Supreme Court shall have original but not exclusive jurisdiction of all cases of ... [m]andamus or prohibition to courts of inferior jurisdiction."

11. Section 761(c) states, in relevant part:

(c) **Ancillary matters.**—The Commonwealth Court shall have original jurisdiction in cases of mandamus ... to courts of inferior jurisdiction ... where such relief is ancillary to matters within its appellate jurisdiction....

12. Hanes also argues that we should transfer the case to the Supreme Court pursuant to Section 5103(a) of the Judicial Code, which states, in pertinent part:

(a) **General rule.**—If a[ ] ... matter is taken to or brought in a court ... of this Commonwealth which does not have jurisdiction of the ... matter, the court ... shall not ... dismiss the matter, but shall transfer the record thereof to the proper tribunal of this Commonwealth, where the ... matter shall be treated as if originally filed in the transferee tribunal on the date when the ... matter was first filed in a court ... of this Commonwealth....

42 Pa.C.S. § 5103(a). *See also* Pa. R.A.P. 751(a) (same); Pa. R.A.P. 751(b) ("[A]n appeal or other matter may be transferred from a court to another court under this rule by order of court or by order of the prothonotary of any appellate court affected.").

Second, Hanes asserts that the Department does not have standing to seek mandamus relief, because only the Attorney General, the Montgomery County District Attorney, or a private citizen who has suffered a special injury may seek to enforce an officer's public duty,[13] and the Attorney General did not authorize the Department to bring suit under Section 204(c) of the Commonwealth Attorneys Act.

Finally, Hanes contends that the Department fails to state a claim for which mandamus relief may be granted, because the Department failed to show that a Clerk of the Orphans' Court does not have the discretion to determine the constitutionality of the Marriage Act. Hanes argues that the Department must show that Sections 1102 and 1704 of the Marriage Law are constitutional in order to establish a clear right to relief, and furthermore, that the Department cannot do so because the Marriage Law's exclusion of same-sex marriages violates the inalienable right to marry solely based on gender in violation of the Fourteenth Amendment to the United States Constitution and Article 1, Sections 1, 26 and 28 of the Pennsylvania Constitution.[14]

## D.

By order dated August 22, 2013, argument was limited to the following issues encompassing the claims raised by Hanes in opposition to the Department's Application:[15]

- Whether this Court lacks subject matter jurisdiction because Hanes is a Judicial Officer and his issuance of a marriage license is a judicial act;

- Whether the Department has standing and, if not, what is the effect of the

---

**13.** *See Dorris v. Lloyd*, 375 Pa. 474, 476–77, 100 A.2d 924, 926 (1953) ("The Mandamus Act of June 8, 1893, P.L. 345, ... Section 4, 12 P.S. § 1914, provides that 'When the writ is sought to procure the enforcement of a public duty, the proceeding shall be prosecuted in the name of the commonwealth on the relation of the attorney general: *Provided however,* That said proceeding, in proper cases, shall be on the relation of the district attorney of the proper county: * * *.") (emphasis in original). *But cf.* Section 2(a)[794] of the Judiciary Act Repealer Act (JARA), Act of April 28, 1978, P.L. 202, 42 P.S. § 20002(a)[794] ("[E]xcept as otherwise expressly provided in this subsection, the following acts and parts of acts are hereby repealed absolutely ... [A]ct of June 8, 1893 (P.L. 345, No. 285), referred to as the 'Mandamus Act of 1893' and entitled 'An act relating to Mandamus....' "); Section 3(b) of the JARA, 42 P.S. § 20003(b) ("[G]eneral rules promulgated pursuant to the Constitution of Pennsylvania and the Judicial Code in effect on the effective date of the repeal of a statute, shall prescribe and provide the practice and procedure with respect to the enforcement of any right, remedy or immunity where the practice and procedure had been governed by the repealed statute on the date of its repeal.

If no such general rules are in effect with respect to the repealed statute on the effective date of its repeal, the practice and procedure provided in the repealed statute shall continue in full force and effect, as part of the common law of the Commonwealth, until such general rules are promulgated. . . .").

**14.** Pa. Const. art. I, §§ 1, 26, 28. Article 1, Section 1 provides:

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

In turn, Article 1, Section 26 provides, "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." Finally, Article 1, Section 28 states, "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual."

**15.** We consolidate the issues argued before the Court in the interest of clarity.

Pennsylvania Attorney General's delegation of the duty to defend the constitutionality of Sections 1102 and 1704 of the Marriage Law; and

- Whether the constitutionality of the act sought to be enforced can be raised as a defense to a mandamus action.

On September 4, 2013, argument was heard on the foregoing issues. We will now consider these issues separately.[16]

## II.

◼ Relying on several cases, Hanes first argues that this Court cannot decide this case because jurisdiction properly lies with the Supreme Court under Section 721(2) of the Judicial Code, 42 Pa.C.S. § 721(2), which provides that "[t]he Supreme Court shall have original but not exclusive jurisdiction of all cases of . . . (2) Mandamus or prohibition to *courts* of inferior jurisdiction." (Emphasis added). He argues that he is a "judicial officer" and his issuance of a marriage license under the Marriage Law is a "judicial act" because he is issuing a marriage license on behalf of the Orphans' Court division of the Court of Common Pleas of Montgomery County, and, therefore, this mandamus action is one directed to a "court of inferior jurisdiction" conferring jurisdiction to the Supreme Court.

Hanes is clearly a county officer, because he serves as Register of Wills and Clerk of Orphans' Court, and as such performs only ministerial duties. Article 9, Section 4 of the Pennsylvania Constitution provides that "County officers shall consist of commissioners, controllers or auditors, district attorneys, public defenders, trea-

surers, sheriffs, registers of wills, recorders of deeds, prothonotaries, clerks of the courts, and such others as may from time to time be provided by law." Pa. Const. art. IX, § 4. In counties of the second class (such as Montgomery County) or second class A, one person holds the offices of both Register of Wills and Clerk of Orphans' Court pursuant to Section 1302 of the Second Class County Code, 16 P.S. § 4302. Under Section 711(9) of the Probate, Estates and Fiduciaries Code (Probate Code), 20 Pa.C.S. § 711(9), "[t]he jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division: . . . Marriage licenses, as provided by law." Thus, marriage licenses are issued by the Clerk of Orphans' Court. However, Section 901 of the Probate Code, 20 Pa.C.S. § 901, gives to the Register of Wills "[j]urisdiction of the probate of wills, the grant of letters to a personal representative, and any other matter as provided by law."

Courts of the Commonwealth have held that the Register of Wills, when accepting a will for probate, is acting in judicial capacity. *See Commonwealth ex rel. Winpenny v. Bunn,* 71 Pa. 405, 412 (1872) ("In nothing said herein do we mean to say that the acts of the register are in no case judicial. They are always so[.]"); *In re Sebik's Estate,* 300 Pa. 45, 47, 150 A. 101, 102 (1930) ("[A] register is a judge, and the admission of a will to probate is a judicial decision, which can only be set aside on appeal, and is unimpeachable in any other proceeding." (citing *Holliday v. Ward,* 19 Pa. 485, 489 (1852))); *Walsh v. Tate,* 444 Pa. 229, 236, 282 A.2d 284, 288

---

**16.** On August 19, 2013, a group of 32 same-sex couples, designated as Putative Intervenors, filed a Petition for Leave to Intervene Pursuant to Pa. R.A.P. 1531 seeking to intervene as Respondents in this case. Putative Intervenors allege that Hanes has granted

them marriage licenses and that they have married in the Commonwealth or intend to be married and that this Court's judgment on Hanes' authority to issue the licenses may substantially impact their rights and the validity of their marriages and marriage licenses.

(1971) ("[T]he Register of Wills performs a judicial function and is closely integrated into the judicial branch of government...."); *Cole v. Wells,* 406 Pa. 81, 90–91, 177 A.2d 77, 81 (1962) ("The decree of probate by the Register of Wills constitutes a judicial decree in rem[.]"); *Mangold v. Neuman,* 371 Pa. 496, 500, 91 A.2d 904, 906 (1952) ("judicial decree of the register of wills").

However, the courts have not held that the Clerk of Orphans' Court acts in a judicial capacity when keeping records. For example, in *Miller's Estate,* 34 Pa.H Super. 385 (1907), the appellant's contention that the authority of an Orphans' Court clerk to grant or refuse a marriage license is a judicial and not a ministerial act was rejected by the Superior Court. Another case that Hanes cites is the unpublished single-judge opinion in *Register of Wills & Clerk of the Orphans' Court of Philadelphia License Marriage Bureau v. Office of Open Records* (Pa.Cmwlth., No. 1671 C.D.2009, filed March 26, 2010). Because it is an unpublished single-judge opinion, it is not precedential, Internal Operating Procedure § 414, but it is illustrative of how the definitions in the applicable act determine whether the Clerk of Orphans' Court and/or Register of Wills can be considered a "judicial officer" in some circumstances and not others. In that case, we were considering whether the Register of Wills was a "judicial agency" for the purpose of determining whether the Office of Open Records had jurisdiction over records withheld by the Register of Wills Office under the Right–to–Know Law (RTKL).[17] We noted that Section 102 of the RTKL, 65 P.S. § 67.102, defines "judicial agency" as "[a] court of the Commonwealth or any other entity or office of the unified judicial system," and that Section 102 of the Judicial Code, 42 Pa.C.S. § 102, includes "administrative staff" within the definition of "personnel of the system," which also includes clerks of court and prothonotaries. Based on the definitions in the RTKL, we held that the Office of Open Records could not order the release of judicial records held by the Register of Wills and Clerk of the Orphans' Court of Philadelphia. Moreover, while "personnel of the system" are deemed to be part of a "judicial agency" for purposes of the RTKL, we made an explicit distinction between the "judicial function" of the Register of Wills with respect to the probate of wills and the non-judicial function of the Clerk of Orphans' Court with respect to the issuance of marriage licenses. *Id.*[18]

As we looked to the definitions contained in the RTKL in *Register of Wills & Clerk of the Orphans' Court of Philadelphia License Marriage Bureau,* we look to the definitions in the Judicial Code in deciding whether the Supreme Court has exclusive jurisdiction of this matter under Section 721(2) as a mandamus action to a "court of inferior jurisdiction." 42 Pa.C.S. § 721(2). Section 102 of the Judicial Code defines "court" as "[i]nclud[ing] any one or

**17.** Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

**18.** *See also Retail Clerks Int'l Ass'n, Local 1357 v. Leonard,* 450 F.Supp. 663, 666 (E.D.Pa.1978) ("The powers and duties of the Register of Wills are set forth in [Section 901 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S.] § 901:(t)he register shall have jurisdiction of the probate of wills, the grant of letters to a personal representative, and any other matter as provided by law. It is apparent that the Register's judicial duties are confined to matters relative to the probate of wills. *Sebik's Estate* [.] Thus, we find that the hiring and firing of employees is functionally not within the purview of his judicial duties and therefore not within the ambit of those acts which entitle him to judicial immunity....").

more of the judges of the court who are authorized by general rule or rule of court, or by law or usage, to exercise the powers of the court in the name of the court." 42 Pa.C.S. § 102. Section 102 also defines "judicial officers" as "[j]udges, district justices and appointive judicial officers." In contrast, "county staff" is defined as "[s]ystem and related personnel elected by the electorate of a county ... The term does not include judicial officers." *Id.* In turn, "system and related personnel" is defined as including Registers of Wills and Clerks of the Orphans' Court division. *Id.* Thus, Hanes, as the Clerk of the Orphans' Court and Register of Wills, is "county staff" and is not a judge or judicial officer. Accordingly, he is not within the definition of "court" within the meaning of Section 721(2) of the Judicial Code, and the Supreme Court does not have jurisdiction of this mandamus action against him.

Moreover, this is an action by the Department, part of the Executive Branch of the Commonwealth government. As such, the Department, with counsel designated by the Office of General Counsel, may bring this action in the Commonwealth Court pursuant to Section 761(a)(2) of the Judicial Code, which grants the Commonwealth Court "original jurisdiction of all civil actions or proceedings: ... (2) By the Commonwealth government...." 42 Pa. C.S. § 761(a)(2).

In the alternative, Section 761(a)(1) of the Judicial Code provides that the Commonwealth Court has original jurisdiction of all civil actions or proceedings "[a]gainst the Commonwealth government, including any officer thereof, acting in his official capacity...." 42 Pa.C.S. § 761(a)(1). Section 102 of the Judicial Code also defines "Commonwealth government," in pertinent part, as "[t]he courts and other officers and agencies of the unified judicial system...." 42 Pa.C.S. § 102. Although Hanes is not a "judicial officer," he is named in his official capacity as Clerk of the Orphans' Court of Montgomery County. He is, therefore, an officer of the Commonwealth government under Section 102 of the Judicial Code, and this Court has original jurisdiction under Section 761(a)(1). *Richardson v. Peters,* 610 Pa. 365, 366–67, 19 A.3d 1047–48 (2011); *Werner v. Zazyczny,* 545 Pa. 570, 577 n. 5, 681 A.2d 1331, 1335 n. 5 (1996).[19]

### III.

Hanes next argues that the Department does not have standing[20] under the former Mandamus Act of 1893 and the related cases[21] to initiate the instant man-

---

19. *See also Humphrey v. Dep't of Corrections,* 939 A.2d 987, 991 (Pa.Cmwlth.2007), *aff'd in part, appeal denied in part,* 598 Pa. 191, 955 A.2d 348 (2008) ("When the petitioner seeks the official performance of a ministerial act or mandatory duty, the petitioner properly sounds in mandamus. Here Humphrey requests this Court to order [the Department] to return confiscated UCC items and vacate DC–ADM 803–3. Therefore, we agree that Humphrey's Petition requests mandamus relief and will consider the Petition in this Court's original jurisdiction pursuant to Section 761(a)(1) or the Judicial Code....").

20. The concept of "standing," in its accurate legal sense, is concerned only with the ques-

tion of who is entitled to make a legal challenge to the matter involved. *Pa. Game Comm'n v. Dep't of Envtl. Res.,* 521 Pa. 121, 127, 555 A.2d 812, 815 (1989). Standing may be conferred by statute or by having an interest deserving of legal protection. *Id.* at 128, 555 A.2d at 815. As a general matter, the core concept of standing is that a person who is not adversely affected by the matter he seeks to challenge is not aggrieved thereby and has no right to obtain a judicial resolution of his challenge. *Id.*

21. *See Dombrowski v. City of Philadelphia,* 431 Pa. 199, 245 A.2d 238 (1968); *Dorris.* Hanes also cites *Pittsburgh Palisades Park, LLC v. Commonwealth,* 585 Pa. 196, 888 A.2d

damus proceedings seeking to compel him to perform his public duty, because only the Attorney General, the Montgomery County District Attorney or a private citizen with an interest independent of the public at large has such standing. Because the Department is not the Attorney General or a private citizen, he contends that it does not have standing to maintain this action.

While this action was not brought in the name of the Commonwealth, the Attorney General, by letter dated August 30, 2013, authorized the Department of Health to bring this action on her behalf pursuant to Section 204(c) of the Commonwealth Attorneys Act, which allows the Office of General Counsel, who is the counsel for all state agencies, to do so under Section 301(6) of that statute. When authorizing the General Counsel to bring an action, as the Attorney General did here, Section 204(c) of the Commonwealth Attorneys Act provides that the Office of General Counsel or the counsel for the agency shall act "in [her] stead." 71 P.S. § 732–204(c). The net effect is that the Office of General Counsel has all the rights and duties of the Attorney General, and since Hanes admits that the Attorney General has standing, the Department of Health, through the Office of General Counsel, can maintain this action to enforce a public duty.

■ Moreover, the Department has standing in its own right to bring this action. As the Supreme Court has explained:

[W]hen the legislature statutorily invests an agency with certain functions, duties, and responsibilities, the agency has a legislatively conferred interest in

such matters. From this it must follow that, unless the legislature has provided otherwise, such an agency has an implicit power to be a litigant in matters touching upon its concerns. In such circumstances the legislature has implicitly ordained that such an agency is a proper party litigant, *i.e.*, that it has "standing"....

*Pennsylvania Game Commission*, 521 Pa. at 128, 555 A.2d at 815; *see also Commonwealth v. Beam*, 567 Pa. 492, 497–500, 788 A.2d 357, 361–62 (2005) (holding that the Department of Transportation had the implicit authority under the Aviation Code, 74 Pa.C.S. §§ 5101–6505, to initiate an action in equity to enjoin the operation of an unlicensed airport where the injunctive relief sought was a restrained and supervised form of administrative action and the operation of the unlicensed airport was injurious to the public interest).

Section 2104(c) of the Administrative Code of 1929 (Administrative Code)[22] empowers the Department "[t]o see that laws requiring the registration of ... marriages ... are uniformly and thoroughly enforced throughout the State, and prompt returns of such registrations made to the department." Thus, the General Assembly has specifically conferred upon the Department the duty to ensure the uniform and thorough enforcement of all provisions of the Marriage Law, including Section 1102, defining marriage as "[a] civil contract by which one man and one woman take each other for husband and wife," and Section 1704, which makes same-sex marriages entered into in foreign jurisdictions void within the Commonwealth. 23 Pa.C.S.

---

655 (2005). However, that case was not a mandamus action seeking to compel the performance of a public duty; the relief sought therein was for declaratory and injunctive relief from the purportedly unconstitutional

Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §§ 1101–1904.

**22.** Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 534(c).

§§ 1102, 1704. In addition, the General Assembly has empowered the Department to enforce Section 1301(a), which prohibits persons from being joined in marriage until a license is obtained, and Section 1302, which requires a written and verified application by both parties before a license is issued requiring the disclosure "[a]ny other facts necessary to determine whether legal impediment to the proposed marriage exists." 23 Pa.C.S. §§ 1301(a), 1302(a), (b)(6). Further, Section 1104 requires that "[m]arriage licenses ... shall be uniform throughout this Commonwealth as prescribed by the department ...," in a form that states, under Section 1310, that "[y]ou are hereby authorized to join together in holy state of matrimony, according to the laws of the Commonwealth of Pennsylvania, (name) and (name)...." 23 Pa.C.S. §§ 1104, 1310. Finally, the Department has the duty to uniformly enforce the provisions of Section 1307, which state that "[t]he marriage license shall be issued if it appears from properly completed applications on behalf of each of the parties to the proposed marriage that there is no legal objection to the marriage...." 23 Pa.C.S. § 1307.[23]

Based on the foregoing, it is clear that the Department is the proper party with standing to initiate the instant mandamus proceeding to compel Hanes to discharge his duties in compliance with the Marriage Law, because the Department possesses a substantial, direct, and immediate interest in the subject matter of this litigation pursuant to its authority under the Administrative Code and the Marriage Law.

## IV.

■ Hanes also contends that because he must determine whether to issue marriage licenses, "as provided by law," he has the discretion to determine whether the Marriage Law is constitutional and that it would be unconstitutional as applied to same-sex couples. With respect to whether Hanes' duties as Clerk of the Orphans' Court of Montgomery County give him discretion to determine whether an act is constitutional, our Supreme Court, *albeit* in relation to prothonotaries and clerks of courts, has noted:

It is "well settled" in the intermediate appellate courts of this Commonwealth that the role of the prothonotary of the court of common pleas, while vitally important, is purely ministerial. As a purely ministerial office, any authority exercised by the prothonotary must derive from either statute or rule of court. Further, as "[t]he prothonotary is merely the clerk of the court of Common Pleas[,] [h]e has no judicial powers, nor does he have power to act as attorney for others by virtue of his office." Consistent therewith, "[t]he prothonotary is not 'an administrative officer who has discretion to interpret statutes.'" Thus, while playing an essential role in our court system, the prothonotary's powers do not include the judicial role of statutory interpretation.

As the prothonotary and the clerk of courts are created by the same constitutional provision and have substantially identical statutory grants of authority, we conclude that the well-accepted limitations that the courts of this Commonwealth have recognized in the prothono-

---

**23.** *See, e.g., In re Adoption of R.B.F.*, 569 Pa. 269, 277, 803 A.2d 1195, 1199–1200 (2002) ("[A]s noted, 23 Pa.C.S. § 1704 provides that the Commonwealth only recognizes marriages 'between one man and one woman.' Thus, a same-sex partner cannot be the 'spouse' of the legal parent and therefore cannot attain the benefits of the spousal exception to relinquishment of parental rights [under Section 2903 of the Adoption Act, 23 Pa.C.S. § 2903,] necessary for a valid consent to adoption.").

tary's role are equally applicable to the clerk of courts. . . .

*In re Administrative Order No. 1–MD–2003*, 594 Pa. 346, 360, 936 A.2d 1, 9 (2007).

The same applies to the clerks of the orphans' court division of the courts of common pleas, because they are also created and vested with the same powers by the same constitutional provision, Section 15 of the Schedule to Article 5 of the Constitution.[24] Likewise, the statutory powers conferred upon the clerk of the orphans' court division under Section 2777 of the Judicial Code [25] are identical to those conferred upon the prothonotary under Section 2737, 42 Pa.C.S. § 2737, and the clerk of courts under Section 2757, 42 Pa.C.S. § 2757. Thus, the powers granted under Section 2777 to Hanes as the Clerk of the Orphans' Court:

> [a]re clearly ministerial in nature. Nothing in this grant of authority suggests the power to interpret statutes and to challenge actions of the court that the clerk perceives to be in opposition to a certain law. Thus, the clerk of courts, as a purely ministerial office, has no discretion to interpret rules and statutes. . . .

*In re Administrative Order No. 1–MD–2003*, 594 Pa. at 361, 936 A.2d at 9; *see also Council of the City of Philadelphia v. Street*, 856 A.2d 893, 896 (Pa.Cmwlth.2004), *appeal denied*, 583 Pa. 675, 876 A.2d 397 (2005) ("A ministerial act is defined as 'one which a public officer is required to perform upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning the propriety or impropriety of the act performed.' ") (citations omitted).

Nor is any discretion given to the clerk when issuing the license under the Marriage Law, which requires the clerk to issue a marriage license only if certain criteria are met. Section 1302(a) provides that "[n]o marriage license shall be issued except upon written and verified application made by both of the parties intending to marry," and Section 1302(b) outlines the contents thereof. 23 Pa.C.S. § 1302(a), (b).[26] Section 1303(a) provides that no marriage license shall be issued prior to the third day after application unless the Orphans' Court authorizes a waiver of the time period pursuant to subsection (b). 23 Pa.C.S. § 1303(a), (b).[27] Section 1304(b)

---

**24.** The Schedule to Article 5 of the Pennsylvania Constitution is given the same force and effect as the provisions contained in the main body of the Constitution. *Commonwealth ex rel. Brown v. Heck*, 251 Pa. 39, 41, 95 A. 929, 930 (1915).

**25.** Section 2777 states, in pertinent part:

The office of the clerk of the orphans' court division shall have the power and duty to:
(1) Administer oaths and affirmations and take acknowledgments . . ., but shall not be compelled to do so in any matter not pertaining to the proper business of the office.
(2) Affix and attest the seal of the court to all the process thereof and to the certifications and exemplifications of all documents and records pertaining to the office of the clerk of the orphans' court division and the business of that division.

(3) Enter all orders of the court determined in the division.
(4) Enter all satisfactions of judgments entered in the office.
(5) Exercise the authority of the clerk of the orphans' court division as an officer of the court.
(6) Exercise such other powers and perform such other duties as may now or hereafter be vested in or imposed upon the office by law, . . . [or] order or rule of court.

**26.** As noted above, under Section 1104, the Department prescribes the form of the application. 23 Pa.C.S. § 1104.

**27.** While Section 1303 merely refers to the "court," Section 102 of the Domestic Relations Code, 23 Pa.C.S. § 102, defines "court," in pertinent part, as "[t]he court . . . having jurisdiction over the matter under Title 42 . . .

prohibits the issuance of a license if either of the applicants is under 16 years of age unless the Orphans' Court determines that it is in the best interest of the applicant, and it prohibits issuance of a license if either of the applicants is under 18 years of age unless consented to by the custodial parent. 23 Pa.C.S. § 1304(b)(1), (2). Section 1304 further prohibits issuing a marriage license to incompetent persons unless the Orphans' Court decides that it is in the best interest of the applicant or society, to applicants under the influence of alcohol or drugs, or to applicants within the prohibited degrees of consanguinity. 23 Pa.C.S. § 1304(c), (d), (e). Under Section 1306, Hanes is required to examine each applicant in person as to: (1) the legality of the contemplated marriage; (2) any prior marriages and their dissolution; (3) any of the Section 1304 restrictions; and (4) all information that must be furnished on the application as prepared and approved by the Department. 23 Pa.C.S. § 1306(a). Finally, under Section 1307, Hanes is required to issue the marriage license subject to the Section 1303(a) three-day waiting period, "[i]f it appears from properly completed applications on behalf of each of the parties to the proposed marriage that there is no legal objection to the marriage." 23 Pa.C.S. § 1307. Under Section 1308(a), 23 Pa.C.S. § 1308(a), an applicant can appeal Hanes' refusal to issue a marriage license to the Orphans' Court.

The foregoing statutory scheme, outlining the applicable requirements and procedure for the issuance of a marriage license, does not authorize Hanes to exercise any discretion or judgment with respect to its provisions. Rather, the Marriage Law specifically requires Hanes to furnish and use the appropriate forms and to issue the license if the statutory requirements have been met, subject to the applicable exceptions and review by the Orphans' Court. Such is not a discretionary "judicial act" performed by the "judicial officer" of an inferior court. *See In re Administrative Order No. 1–MD–2003*, 594 Pa. at 361, 936 A.2d at 9; *In re Coats*, 849 A.2d 254, 258 (Pa.Super.2004) ("[T]he orphans' court clerk simply performs its ministerial duty in accordance with the statutory mandate that requires applicants to appear in person.... The office of the clerk of the orphans' court is not *sui juris* but is dependent on county and legislative provisions to implement its function....").[28]

or as otherwise provided or prescribed by law." In turn, as noted above, Section 711(19) of the Probate, Estates, and Fiduciaries Code provides that "[j]urisdiction of the court of common pleas over the following shall be exercised through its orphans' court division: ... [m]arriage licenses, as provided by law." 20 Pa.C.S. § 711(19).

**28.** *See also Rose Tree Media Sch. Dist. v. Dep't of Pub. Inst.*, 431 Pa. 233, 237, 244 A.2d 754, 755–56 (1968) ("[O]nce the Department has approved the amount of reimbursable transportation costs there is no discretion left to the Department in arriving at the actual amount which must be paid to the school district. After approval, the Department is mandated by statute to remit an amount which is to be determined by applying the mechanical formula of multiplying the cost of the approved reimbursable pupil transportation incurred during the school year by the district's aid ratio. The application of that formula does not involve any discretion but merely involves the ministerial duty of making proper computations in accordance with the directives of the statute...."); *Lockyer v. City and County of San Francisco*, 33 Cal.4th 1055, 1081–82, 17 Cal.Rptr.3d 225, 95 P.3d 459, 472–73 (2004) ("[U]nder the statutes reviewed above, the duties of the county clerk and the county recorder at issue in this case properly are characterized as *ministerial* rather than discretionary. When the substantive and procedural requirements established by the state marriage statutes are satisfied, the county clerk and the county recorder each has the respective mandatory duty to issue a marriage license and record a certificate of

## V.

Hanes also argues that the Application should not be granted because the Department has to establish a clear right to relief, and to do that, the Department must show that the provisions in the Marriage Law limiting marriage to a man and a woman are constitutional. The Department asserts that this is the same as raising a counterclaim, which is prohibited under the rules governing mandamus actions. *See* Pa. R.C.P. No. 1096 ("No counterclaim may be asserted."). Until a court has decided that an act is unconstitutional, Hanes must enforce the law as written, and it is not a defense to a mandamus action that the law may be unconstitutional. Only a court can arrive at that conclusion.

## A.

All that a democratic form of government means is that we will be governed democratically—the process does not guarantee any particular outcome. The citizens of the Commonwealth have consented to be governed under the terms of our Constitution, and it provides how the Pennsylvania democracy works. Under Article 2, Section 1, the legislative power of the Commonwealth is vested in the General Assembly. Pa. Const. art. II, § 1. The legislative power is the power "to make, alter and repeal laws. . . ." *Jubelirer v. Rendell,* 598 Pa. 16, 41, 953 A.2d 514, 529 (2008). When the legislature enacts a law, under Article 4, Section 2 it is up to the Governor "to take care that the laws be faithfully executed." Pa. Const. art. IV, § 2. In addition, Article 5, Section 1 of the Constitution states:

> The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal and traffic courts in the City of Philadelphia, such other courts as may be provided by law and justices of the peace. All courts and justices of the peace and their jurisdiction shall be in this unified judicial system.

Pa. Const. art. V, § 1. Under our Constitution then, only the courts have the power to determine the constitutionality of a statute. *In re Investigation by Dauphin County Grand Jury,* 332 Pa. 342, 352–53, 2 A.2d 804, 807 (1938); *Hetherington v. McHale,* 10 Pa.Cmwlth. 501, 311 A.2d 162, 167 (1973), *rev'd on other grounds,* 458 Pa. 479, 329 A.2d 250 (1974).[29]

registry of marriage; in that circumstance, the officials have no discretion to withhold a marriage license or refuse to record a marriage certificate. By the same token, when the statutory requirements are not met, the county clerk and the county recorder are not granted any discretion under the statutes to issue a marriage license or register a certificate of registry of marriage. . . .") (emphasis in original).

29. As a corollary to this claim, Hanes contends that the Department cannot possess a clear legal right to force him to abandon his oath of office and violate the United States and Pennsylvania Constitutions while discharging the duties of his office. *See* Article 6, Section 3 of the Pennsylvania Constitution, Pa. Const. art. VI, § 3 ("[A]ll . . . county officers shall, before entering on the duties of their respective offices, take and subscribe the following oath or affirmation before a person authorized to administer oaths. 'I do solemnly swear (or affirm) that I will support, obey and defend the Constitution of the United States and the Constitution of this Commonwealth and that I will discharge the duties of my office with fidelity.' . . . ."). However, his oath of office requires him to follow the law until a court decides it is unconstitutional. *See, e.g., State ex rel. Atlantic Coast Line R.R. v. State Bd. of Equalizers,* 84 Fla. 592, 595–96, 94 So. 681, 682–83 (1922) ("The contention that the oath of a public official requiring him to obey the Constitution places upon him the

Governmental officials carry out the functions assigned to the office and no more because when decisions are reached that follow these and other constitutional procedures, it fosters acceptance of a statute or decision even by those who strongly disagree. When public officials do not perform their assigned tasks, it creates the type of "complication" caused by the United States Attorney General's decision not to defend DOMA, which led the Supreme Court of the United States in *Windsor* to spend as much time addressing that "complication" as it did on the merits of the case. In this case, a clerk of courts has not been given the discretion to decide whether the statute he or she is charged to enforce is a good idea or bad one, constitutional or not. Only courts have the power to make that decision.

### B.

■ While it is clear that Hanes did not have the power to decide on his own that the law is unconstitutional and to issue marriage licenses to same-sex couples, the question now is whether he can take advantage of his improper action in doing so and challenge the constitutionality of the Marriage Law as a defense in a mandamus action to compel him to follow its provisions. To allow him to raise such a defense would be the functional equivalent of a counterclaim, which is not permitted by Pa. R.C.P. No. 1096.

Moreover, *Commonwealth ex rel. Third School–Dist. of the City of Wilkes Barre v. James*, 135 Pa. 480, 19 A. 950 (1890), an old case, like other cases discussed here that were decided before the mandamus rules, analyzed what was allowed in a mandamus action. In that case, the clerk of the former Court of Quarter Sessions refused to receive and record the resolutions of school boards contrary to statute. In defense of an application for mandamus seeking to compel him to comply with the law and to perform his ministerial duty, the clerk argued that the applicable statute was unconstitutional. In rejecting this defense, the Supreme Court explained:

It is too plain for argument that the appellant, who is the clerk of the court of quarter sessions of Luzerne county, had no right to decline to receive and record the resolutions of the school boards of the third school-district, accepting of the provisions of the act of 23d May, 1889. P.L. 274. The act referred to requires him to receive and record these papers. His duties were purely ministerial, and the court below properly awarded the peremptory mandamus.

It is but just to say that his act in refusing does not appear to have been one of insubordination, but was intended to test the constitutionality of the said act of 1889. We are of the opinion that the constitutional question cannot be raised in this way. We really have no case before us, beyond the mere refusal of the clerk to file the papers. This does not require discussion. The order of the court below awarding the peremptory mandamus is affirmed.

*Id.* at 482–83, 19 A. 950.[30]

We note that in two other cases involving public officers with discretionary pow-

duty or obligation to determine whether an act is constitutional before he will obey it is, I think without merit. The fallacy in it is that every act of the Legislature is presumptively constitutional until judicially declared otherwise, and the oath of office 'to obey the Constitution' means to obey the Constitution, not as the officer decides, but as judicially deter- mined. The doctrine that the oath of office of a public official requires him to decide for himself whether or not an act is constitutional before obeying it will lead to strange results, and set at naught other binding provisions of the Constitution.").

**30.** *See also The Crossings at Fleming Island Community Dev. Dist. v. Echeverri*, 991 So.2d

ers, our Supreme Court addressed challenges to the constitutionality of a statute as a defense in a mandamus action. In *Commonwealth ex rel. Brown v. Heck,* 251 Pa. 39, 95 A. 929 (1915), our Supreme Court considered the constitutionality of a statute altering the counties of a judicial district, an issue that was raised as a defense in a mandamus action seeking to compel a common pleas court judge to perform his judicial duties to administer an estate. The Supreme Court did not address or distinguish *James.* In *Commonwealth ex rel. Carson v. Mathues,* 210 Pa. 372, 59 A. 961 (1904), the Supreme Court affirmed a common pleas order granting mandamus to compel the state treasurer to pay warrants for judicial salaries. The Supreme Court did not address the trial court's analysis of *James* or the trial court's holding that the treasurer's standing as "a high constitutional officer of the Commonwealth" who exercises "discretion" permitted him to defend on the purported unconstitutionality of the statute setting the salaries. *James* is, nonetheless, controlling because the instant case also involves a mandamus action to compel a court clerk with no discretionary authority to perform his mandatory ministerial duty, whereas the foregoing cases involved constitutional officers with discretionary authority.

Because only the General Assembly may suspend its own statutes, because only courts have the authority to determine the constitutionality of a statute, and because all statutes are presumptively constitutional, a public official "[i]s without power or authority, even though he is of the opinion that a statute is unconstitutional, to implement his opinion in such a manner as to effectively abrogate or suspend such statute which is presumptively constitutional until declared otherwise by the Judiciary." *Hetherington,* 311 A.2d at 168. Based on the foregoing, it is clear that Hanes does not have standing to assert the purported unconstitutionality of the Marriage Law as a defense to the instant Petition.

### VI.

With respect to the Putative Intervenors' Petition for Leave to Intervene,[31] as outlined above, the constitutionality of the Marriage Law may not be raised as a defense in the instant mandamus proceedings and will not be considered by this Court. In addition, the legality of Hanes' actions and any purported rights obtained thereby are not at issue and may not be established in the instant mandamus action. *See, e.g., Barge,* 39 A.3d at 545 ("The purpose of mandamus is not to establish

793, 799 (Fla.2008) (holding that there is no "defensive posture" exception to the historical rule that a public official acting in his or her official capacity does not have standing to challenge the validity of a statute); *Li v. State,* 338 Or. 376, 396–98, 110 P.3d 91, 101–02 (2005) (holding that while executing his or her official duties, a governmental official must take care to consider the meaning of the state and federal constitutions, but that does not grant official powers to take actions and fashion remedies that would constitute *ultra vires* acts); *Lockyer,* 33 Cal.4th at 1082, 17 Cal.Rptr.3d 225, 95 P.3d at 473 (holding that a local public official charged with the ministerial duty of enforcing a statute does not have the authority to refuse to enforce the

statute on the basis of the official's view that it is unconstitutional in the absence of a judicial determination of unconstitutionality).

**31.** Pa. R.A.P. 1531(b) provides:

**(b) Original jurisdiction petition for review proceedings.** A person not named as a respondent in an original jurisdiction petition for review, who desires to intervene in a proceeding under this chapter, may seek leave to intervene by filing an application for leave to intervene.... The application shall contain a concise statement of the interest of the applicant and the grounds upon which intervention is sought.

legal rights, but to enforce those rights already established beyond peradventure.") (citation omitted).[32] Moreover, there are no obstacles preventing those adversely affected by the provisions of the Marriage Law or putatively possessing rights based on Hanes' actions, such as the Putative Intervenors, from asserting their own rights in an appropriate forum. *See Whitewood v. Corbett* (No. 13–1861) (M.D.Pa.).

## VII.

▆▆▆ Based on the foregoing, we believe that the Department is entitled to the requested summary relief in mandamus. As the Pennsylvania Supreme Court has recently explained:

The writ of mandamus exists to compel official performance of a ministerial act or mandatory duty. *See Delaware River Port Auth. v. Thornburgh*, 508 Pa. 11, [20,] 493 A.2d 1351, 1355 (1985). Mandamus cannot issue "to compel performance of a discretionary act or to govern the manner of performing [the] required act." *Volunteer Firemen's Relief Ass'n of City of Reading v. Minehart* [, 415] Pa. 305, [311,] 203 A.2d 476, 479 (1964). This Court may issue a writ of mandamus where the petitioners have a clear legal right, the responding public official has a corresponding duty, and no other adequate and appropriate remedy at law exists. *Id.; see Board of Revision of Taxes v. City of Philadelphia*, 607 Pa. 104, [133,] 4 A.3d 610, 627 (2010). Moreover, mandamus is proper to compel the performance of official duties whose scope is defined as a result of the mandamus action litigation. *Thornburgh*, [508 Pa. at 20,] 493 A.2d at 1355. Thus, "we have held that mandamus will lie to compel action by an official where his refusal to act in the requested way stems from his erroneous interpretation of the law." *Minehart*, [415 Pa. at 311,] 203 A.2d at 479–80.

*Fagan v. Smith*, 615 Pa. 87, 90, 41 A.3d 816, 818 (2012).

As outlined above, Hanes has admittedly failed to comply with his mandatory ministerial public duty under the Marriage Law by issuing marriage licenses to same-sex couples, by accepting the marriage certificates of same-sex couples, and by waiving the mandatory three-day waiting period, all in violation of the express provisions of the Marriage Law. Even if Hanes is correct in his view that portions of the Marriage Law are unconstitutional, as noted above, the instant mandamus action is not the proper forum in which such a determination may be made. *Barge.* The proper method for those aggrieved is to bring a separate action in the proper forum raising their challenges to the Marriage Law. Unless and until either the General Assembly repeals or suspends the Marriage Law provisions or a court of competent jurisdiction orders that the law is not to be obeyed or enforced, the Marriage Law in its entirety is to be obeyed and enforced by all Commonwealth public officials.

Accordingly, the Department's Amended Application for Summary Relief seeking peremptory judgment in mandamus is granted; Hanes' Preliminary Objections and Putative Intervenors' Petition for Leave to Intervene Pursuant to Pa. R.A.P. 1531 are dismissed as moot.

### ORDER

AND NOW, this *12th* day of *September,* 2013, the Department of Health's Amended Application for Summary Relief for peremptory judgment in mandamus is granted. D. Bruce Hanes, in his official

---

**32.** *See also* Pa. R.C.P. No. 2329(1) ("[A]n application for intervention may be refused, if ... the claim or defense of the petitioner is not in subordination to and in recognition of the propriety of the action....").

capacity as the Clerk of the Orphans' Court of Montgomery County, is directed to comply with all provisions of the Marriage Law, 23 Pa. C.S. §§ 1101–1905, while discharging the duties of his office, including the provisions of Sections 1102, 1303(a) and 1704, 23 Pa.C.S. §§ 1102, 1303(a) and 1704, and he shall cease and desist from issuing marriage licenses to same-sex applicants, from accepting the marriage certificates of same-sex couples, and from waiving the mandatory three-day waiting period in violation of the Marriage Law. The Preliminary Objections of D. Bruce Hanes and the Petition for Leave to Intervene Pursuant to Pa. R.A.P. 1531 filed by Putative Intervenors are dismissed as moot.