936 A.2d 1 (2007)
In re ADMINISTRATIVE ORDER NO. 1-MD-2003
Appeal of Honorable James P. Troutman, Clerk of Courts of the Court of Common Pleas of Berks County
The Honorable James P. Troutman, Clerk of Courts of Berks County, Petitioner,
v.
Court of Common Pleas of Berks County, Respondent.
Supreme Court of Pennsylvania.
Argued March 6, 2007.
Decided November 20, 2007.
*3 Daryl F. Moyer, Esq., Bear Antanavage & Moyer, Hamburg, for James P. Troutman.
Christopher D. Carusone, Esq., Office of the Attorney General, Amy Zapp, Esq., Richard A. Sheetz, Jr., Esq., Thomas W. Corbett, Jr., Esq., PA Office of Attorney General, for Attorney General's Office.
David R. Eshelman, Esq., Eshelman & Shucker, Reading, for All unrepresented ARD defendants.
David M. Donaldson, Esq., Howard M. Holmes, Esq., Philadelphia, for Berks County Court of Common Pleas.
David Crowley, Esq., Bellefonte, for amicus curiae Pennsylvania Association of Criminal Defense Lawyers.
BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, and BALDWIN, JJ.

OPINION
Chief Justice CAPPY.
This appeal stems from the exceptions of the Honorable James P. Troutman, Clerk of Courts of the Court of Common Pleas of Berks County ("Appellant" or "Troutman") to an administrative order entered in that court directing him to seal certain records in his custody. For the following reasons, we hold that the Court of Common Pleas of Berks County possessed original jurisdiction to entertain Troutman's exceptions, and the Commonwealth Court had appellate jurisdiction to review an appeal of the dismissal of those exceptions. We also find that Troutman lacked standing to bring such an action. Therefore, we affirm the order of the Commonwealth Court.
The facts underlying this appeal are as follows. On August 27, 2003, the Court of Common Pleas of Berks County modified the form "Order for Dismissal and Expungement" used for criminal defendants who have successfully completed the Accelerated Rehabilitative Disposition ("ARD") program. As modified, the Order for Dismissal and Expungement mandates: "The Clerk of Courts shall seal the entire record and Court Information Management shall seal the electronic records to prohibit public access to them." Approximately two months later, on November 3, 2003, Administrative Judge of the Court of Common Pleas Scott D. Keller issued an administrative order which stated:
AND NOW, the 3rd day of November, 2003, it is hereby ORDERED AND DECREED that the Clerk of Courts is *4 directed to immediately comply with and execute the procedures outlined in Expungement Orders of the Court of Common Pleas of Berks County. Failure to implement the Orders may subject the Clerk of Courts, James Troutman, to contempt proceedings.
Administrative Order No. 1-MD-2003 (the "Order").
Nine days later, Troutman filed "exceptions" in the Court of Common Pleas to the Order, arguing that it violated the Criminal History Record Information Act ("CHRIA"), 18 Pa.C.S. §§ 9101-9183. Specifically, Troutman contended that CHRIA prohibits the expungement of criminal records maintained by the court. Thus, by mandating the expungement of records of those who successfully completed the ARD program, the Order was, in Troutman's view, inconsistent with and in violation of CHRIA.
After a hearing before a three-judge panel, the Court of Common Pleas of Berks County dismissed Troutman's exceptions. It held that CHRIA does not apply to court records; that the expungement of ARD defendants' criminal records was lawful; and moreover, that Troutman lacked standing to challenge the Order.
The Commonwealth Court, en banc, affirmed the Court of Common Pleas' dismissal of Troutman's exceptions in an opinion authored by President Judge James Gardner Colins. The court first found that Troutman lacked standing to challenge the Order. In support of this conclusion, the court opined that CHRIA confers no authority on clerks of court to enforce its provisions or to exercise any independent discretion. As such, Troutman had no basis on which to lodge a challenge to the Order. The Commonwealth Court also found that it had jurisdiction to consider Troutman's challenge as the Court of Common Pleas of Berks County's ruling was a final order subject to appellate review by the Commonwealth Court. 42 Pa.C.S. § 762.
Judge Mary Hannah Leavitt filed a lone dissent contending that Troutman had standing to challenge the Order, but that the Court of Common Pleas of Berks County and the Commonwealth Court lacked jurisdiction over the matter. She interpreted the relief sought by Troutman as attempting to restrain the Court of Common Pleas from carrying out its Order. According to the dissent, such a restraint requires a writ of prohibition and only the Supreme Court has the authority of prohibition over a court of common pleas. As such, Judge Leavitt would have found that the lower tribunals were both without jurisdiction to entertain Troutman's exceptions.
Troutman petitioned this Court for allocatur, which we granted. In addition to the issues framed by Troutman[1], we directed the parties to address three additional issues:
(1) Whether the Court of Common Pleas of Berks County had jurisdiction over this matter.
(2) Whether the Commonwealth Court had appellate jurisdiction over this matter.

*5 (3) Whether jurisdiction in this matter lies in the Commonwealth Court's original jurisdiction or this Court's original jurisdiction by way of a petition for writ of prohibition.
In Re: Administrative Order No. 1-MD-2003, 586 Pa. 478, 895 A.2d 526 (2006).[2] As these three related issues are critical threshold matters of subject matter jurisdiction, this Court shall address them first.
Troutman argues that the Court of Common Pleas and the Commonwealth Court had concurrent original jurisdiction over his exceptions pursuant to 42 Pa.C.S. § 761(b), which states:
(b) Concurrent and exclusive jurisdiction.  The jurisdiction of the Commonwealth Court under subsection (a) shall be exclusive except as provided in section 721 (relating to original jurisdiction) and except with respect to actions or proceedings by the Commonwealth government, including any officer thereof, acting in his official capacity, where the jurisdiction of the court shall be concurrent with the several courts of common pleas.
42 Pa.C.S. § 761(b). According to Troutman, his exceptions to the Order constitute actions or proceedings by a government officer acting in his official capacity. As such, it would have been proper for him to file his exceptions in either the Berks County Court of Common Pleas or the Commonwealth Court. By extension, Troutman argues that as the Court of Common Pleas had original jurisdiction over this matter, it was properly before the Commonwealth Court pursuant to its appellate jurisdiction.
Similarly, Appellee Court of Common Pleas of Berks County, represented by the Administrative Office of Pennsylvania Courts, likewise contends that it had jurisdiction over Troutman's exceptions. It explains that under 42 Pa.C.S. § 931, the courts of common pleas have very broad and general jurisdiction. Further, the Court of Common Pleas argues, that a court of common pleas has jurisdiction over ARD defendants, thus it also has jurisdiction to issue and enforce administrative orders governing their records. This includes the jurisdiction to hear challenges to such orders. Finally, the Court of Common Pleas of Berks County believes that the Commonwealth Court properly exercised appellate jurisdiction over the proceedings.
Jurisdiction over the subject matter is conferred solely by the Constitution and laws of the Commonwealth. Heath v. Workers' Compensation Appeal Board, 580 Pa. 174, 860 A.2d 25, 29 (2004). The test for whether a court has subject matter jurisdiction inquires into the competency of the court to determine controversies of the general class to which the case presented for consideration belongs. Heath, 860 A.2d at 26. Thus, as a pure question of law, the standard of review in determining whether a court has subject matter jurisdiction is de novo and the scope of review is plenary. Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Insurance Co., 589 Pa. 317, 908 A.2d 888, 897 (2006). Whether a court has subject matter jurisdiction over an action is a fundamental issue of law which may be raised at any time in the *6 course of the proceedings, including by a reviewing court sua sponte. Commonwealth v. Little, 455 Pa. 163, 314 A.2d 270, 272 (1974). Further, subject matter jurisdiction may not be conferred by consent of the parties and a defect of such jurisdiction may not be waived. Id.
We approach the issue of subject matter jurisdiction by looking to the laws of the Commonwealth. Therefore, this question involves a matter of statutory construction. With respect to matters of statutory construction, we employ the Statutory Construction Act of 1972. 1 Pa.C.S. § 1501 et seq. Under the now well-known tenets of the Statutory Construction Act "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly[,]" 1 Pa.C.S. § 1921(a). The Act counsels that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). When the words of a statute are not explicit, the General Assembly's intent is to be ascertained by considering matters other than statutory language, like the occasion and necessity for the statute; the circumstances of its enactment; the object it seeks to attain; the mischief to be remedied; former laws; consequences of a particular interpretation; contemporaneous legislative history; and legislative and administrative interpretations. 1 Pa.C.S. § 1921(c). Pa. Assoc. Builders and Contractors, Inc. v. Dept. of General Services, ___ Pa. ___, 932 A.2d 1271 (2007). With this construct in mind, we turn to the jurisdictional statutes at issue in this appeal.
The General Assembly, through the Judicial Code, has set forth the jurisdiction of the courts of common pleas and has done so broadly. Section 931 of the Judicial Code states:
Except where exclusive original jurisdiction of an action or proceeding is by statute or by general rule adopted pursuant to section 503 (relating to reassignment of matters) vested in another court of this Commonwealth, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas.
42 Pa.C.S. § 931(a). Moreover, "proceeding" is defined by statute as including:
[E]very declaration, petition or other application which may be made to a court under law or usage or under special statutory authority but the term does not include an action or an appeal.
42 Pa.C.S. § 102.
Thus, based upon the clear and unambiguous words of the Judicial Code, the courts of common pleas are granted "unlimited original jurisdiction" in "all actions and proceedings" not exclusively vested elsewhere. 42 Pa.C.S. § 931(a)(emphasis supplied). Furthermore, the term "proceedings" is likewise expansively defined by the General Assembly as to include "every declaration, petition or other application. . . ." 42 Pa.C.S. § 102 (emphasis supplied).
Applying the sweeping statutory grant of jurisdiction of the courts of common pleas, we have no difficulty in concluding that the Court of Common Pleas of Berks County had jurisdiction over this matter. First, there is no question that the Court of Common Pleas had jurisdiction over the criminal defendants certified for the Berks County ARD program. Pa. R.Crim.P. 320. Furthermore, it is beyond peradventure that the Court of Common Pleas had jurisdiction to issue the ARD enforcement-related Order. When Troutman *7 challenged that Order, which was addressed to him, Troutman's application for withdrawal of the Order could be considered as either being filed in connection with an existing proceeding or triggering a proceeding. In either case, Troutman's challenge fell within the court of common pleas' purview pursuant to the extensive grant of jurisdiction found in Section 931(a) and Section 102. Thus, we hold that the Court of Common Pleas of Berks County had jurisdiction to adjudicate Troutman's exceptions to the Order.
Finding that original jurisdiction in this matter was properly in the Court of Common Pleas of Berks County, we also hold that the Commonwealth Court had jurisdiction to review this matter on appeal. Specifically, Section 762 of the Judicial Code, which sets forth the Commonwealth Court's jurisdiction for appeals from the courts of common pleas, states in relevant part:
(a) General rule.  Except as provided in subsection (b), the Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following cases:
(1) Commonwealth civil cases.  All civil actions or proceedings:
(ii) By the Commonwealth government, including any officer thereof acting in his official capacity.
42 Pa.C.S. § 762.
First, as explained above, we determine that Troutman's appeal to the Commonwealth Court arose from a civil proceeding. Furthermore, Troutman is considered to be the Commonwealth government as a Commonwealth officer. 42 Pa.C.S. § 102 (defining "Commonwealth government" as the "government of the Commonwealth, including the courts and other officers or agencies of the unified judicial system"); PA. CONST. art. V, § 15 (designating clerk of courts as an officer of the court of common pleas). Thus, this matter constitutes a civil proceeding by the Commonwealth government, 42 Pa.C.S. § 762(a)(1)(ii). Moreover, the Court of Common Pleas of Berks County issued an order which resolved Troutman's exceptions. A "final order" is "any order that disposes of all claims and all parties. . . ." Pa.R.A.P. 341(b)(1). We find that the Court of Common Pleas' order was a final order as it disposed of the claims and the parties before it.
Therefore, based upon the above, and applying the clear language of Section 762, we conclude that the Commonwealth Court had appellate jurisdiction over the appeal by Troutman of the order of the Court of Common Pleas of Berks County.[3]
Finding proper original and appellate jurisdiction in the tribunal's below, we turn to an examination of whether Troutman had standing to pursue this matter.[4]
Any "party seeking judicial resolution of a controversy in this Commonwealth must, as a prerequisite, establish that he has standing to maintain the action." Dauphin County Public Defender's *8 Office v. Court of Common Pleas of Dauphin County, 578 Pa. 59, 849 A.2d 1145, 1148 (2004). In order to have standing to challenge an official order or action, a party must be aggrieved by the action or order. Commonwealth v. J.H., 563 Pa. 248, 759 A.2d 1269, 1271 (2000); see also Pittsburgh Palisades Park, L.L.C. v. Commonwealth, 585 Pa. 196, 888 A.2d 655, 659 (2005). For a party to be considered aggrieved, he must have a substantial, direct, immediate and not remote interest in the subject matter of the litigation. Commonwealth v. J.H., 759 A.2d at 1271; see also In re Hickson, 573 Pa. 127, 821 A.2d 1238 (2003). An interest is "substantial" if it is an interest in the resolution of the challenge which surpasses the common interest of all citizens in procuring the obedience to the law. Pittsburgh Palisades Park, 888 A.2d at 660. A `direct' interest requires a showing that the matter complained of caused harm to the party's interest, i.e., a connection between the harm and the violation of the law. Id. Finally, an interest is "immediate" if the causal connection is not remote or speculative. Id.
It is beyond cavil that there is no standing in a common citizen to assert the common interest of all citizens in procuring obedience to the law. Wm. Penn Parking Garage, Inc. v. City of Pittsburgh, 464 Pa. 168, 346 A.2d 269, 281 (1975). In order to establish the substantial interest required to confer standing, a potential party must assert something more. In the case at bar, Troutman asserts that the "something more" supporting his standing to challenge the Order is his office as clerk of courts.
Troutman claims to have a constitutional and statutory obligation as clerk of courts to maintain court records for public access. Thus, his interest surpasses that of an ordinary citizen in ensuring that the provisions of the CHRIA are enforced. He further contends that his harm is direct in that it has interfered with the execution of his official duties and has subjected him to the threat of contempt sanctions for not complying with the Order. Finally, Troutman claims that the harm posed by the Order is immediate in that it is now impacting his duties and subjecting him to sanctions.
In order to determine whether Troutman's interests in this case exceed those of the ordinary citizen, it is necessary to explore the nature of the office of clerk of courts. The Pennsylvania Constitution provides that until otherwise provided by law, the offices of prothonotary and clerk of courts of the courts of common pleas shall "maintain and be responsible for the records, books and dockets" of their court. PA. CONST. art. V, § 15. Further, Section 2757 of the Judicial Code outlines the powers and duties of the office of clerk of courts. It states:
The office of clerk of courts shall have the power and duty to:
(1) Administer oaths and affirmations and take acknowledgments pursuant to section 327 (relating to oaths and acknowledgments), but shall not be compelled to do so in any matter not pertaining to the proper business of the office.
(2) Affix and attest the seal of the court or courts to all the process thereof and to the certifications and exemplifications of all documents and records pertaining to the office of the clerk of courts and the business of the court or courts of which it is the clerk of courts.
(3) Enter all criminal judgments and judgments entered by confession.
(4) Exercise the authority of the clerk of courts as an officer of the court.

*9 (5) Exercise such other powers and perform such other duties as may now or hereafter be vested in or imposed upon the office by law, home rule charter, order or rule of court, or ordinance of a county governed by home rule charter or optional plan of government.
42 Pa.C.S. § 2757.
It is important for the analysis which follows to note that the clerk of courts and the prothonotary are parallel offices, the former administering the criminal division of the court of common pleas and the latter the civil division. Both offices derive their constitutional authority from Article V, § 15. Further, 42 Pa.C.S. § 2737 provides the prothonotary with the same roles over the civil division as the clerk of courts has under § 2757. The only difference is the prothonotary's added power to "enter all satisfactions of civil judgments." 42 Pa.C.S. § 2737(4).
It is "well settled" in the intermediate appellate courts of this Commonwealth that the role of the prothonotary of the court of common pleas, while vitally important, is purely ministerial. Gotwalt v. Dellinger, 395 Pa.Super. 439, 577 A.2d 623, 625 (1990) (citing Chamberlain v. Altoona Hospital, 389 Pa.Super. 600, 567 A.2d 1067, 1068 (1989); Irwill Knitwear Corp. v. Wexler, 229 Pa.Super. 48, 323 A.2d 23, 24 (1974)). As a purely ministerial office, any authority exercised by the prothonotary must derive from either statute or rule of court. Gotwalt, 577 A.2d at 625. (citing Newsome v. Braswell, 267 Pa.Super. 83, 406 A.2d 347, 349 (1979)). Further, as "[t]he prothonotary is merely the clerk of the court of Common Pleas[,][h]e has no judicial powers, nor does he have power to act as attorney for others by virtue of his office." Id. (citing Smith v. Safeguard Mutual Insurance Co., 212 Pa.Super. 83, 239 A.2d 824, 826 (1968)). Consistent therewith, "[t]he prothonotary is not `an administrative officer who has discretion to interpret statutes.'" Thompson v. Cortese, 41 Pa.Cmwlth. 174, 398 A.2d 1079, 1081 (1979) (quoting Warner v. Cortese, 5 Pa.Cmwlth. 51, 288 A.2d 550, 552 (1972)). Thus, while playing an essential role in our court system, the prothonotary's powers do not include the judicial role of statutory interpretation.
As the prothonotary and the clerk of courts are created by the same constitutional provision and have substantially identical statutory grants of authority, we conclude that the well-accepted limitations that the courts of this Commonwealth have recognized in the prothonotary's role are equally applicable to the clerk of courts. The powers granted to the clerk of courts by 42 Pa.C.S. § 2757 are clearly ministerial in nature. Nothing in this grant of authority suggests the power to interpret statutes and to challenge actions of the court that the clerk perceives to be in opposition to a certain law. Thus, the clerk of courts, as a purely ministerial office, has no discretion to interpret rules and statutes. Thompson, supra. As such, it is not the function of the clerk of courts to interpret the administrative orders of the court of common pleas to determine whether they comply with the law.
In the case at bar, Troutman had no authority by virtue of his office to interpret the Order's compliance with CHRIA. As an officer of the court of common pleas, he had the duty to comply with the Order. Troutman's interest in challenging the legality of the Order is the same as that of any other citizen. Thus, his interest here cannot be deemed substantial. We conclude, therefore, that Troutman lacked standing to challenge the Order. The order of the Commonwealth Court is hereby affirmed.
*10 Justice BAER joins the opinion.
Justice CASTILLE files a concurring opinion.
Justice SAYLOR files a concurring opinion in which Justice EAKIN joins.
Justice BALDWIN files a concurring opinion.
Justice CASTILLE, concurring.
I join the Majority Opinion with respect to the jurisdictional question. I write separately to address appellant's standing. Contrary to the alternative holding of the courts below, I believe that appellant had standing to bring this action in those courts; his claim fails, in my judgment, only because his legal position is frivolous. Thus, although I join the denial of relief, I come to that conclusion through a different analysis.
The Majority finds that the Clerk's "interest in challenging the legality of the Order [below] is the same as that of any other citizen. Thus, his interest here cannot be deemed substantial." Majority Slip Op. at 12. I respectfully disagree. My reasoning on this point largely tracks that persuasively expressed by the Honorable Mary Hannah Leavitt in her dissenting opinion in the Commonwealth Court, such that I do better merely to cite her astute analysis:
The majority does not discern any "adverse effect to Troutman, beyond that of the common citizen's interest in seeing the law followed." . . . The Clerk . . ., not the body politic, faces the possibility of jail time should the Clerk fail to carry out the court's directive. The Clerk's interest is substantial, direct and immediate.
The Clerk's standing, however, is founded not [only] on the threat of contempt but, rather, on the duties of his office. Only the Clerk of Courts, not the common citizen, has had the responsibility conferred upon him by the Pennsylvania Constitution to maintain court records for public access. [PA. CONST. art. 5, § 15]. The particulars of this constitutional duty are established in the Judicial Code. They are also addressed in the Pennsylvania Rules of Criminal Procedure, which direct a clerk of courts to "maintain the criminal case file for the court of common pleas" and a "list of docket entries" [Pa.R.Crim.P.] 113(A),(B). The duties conferred on the Clerk of Courts by our Constitution, by our Legislature and by our Supreme Court give him an interest in an administrative order that directs him to purge the very records he is duty bound to maintain.
In re Administrative Order No. 1-MD-2003, 882 A.2d 1049, 1053-54 (Pa.Cmwlth. 2005) (footnote omitted) (Leavitt, J., dissenting). To this I would add only that the Majority's rejection of the Clerk's standing is difficult to square with this Court's embrace of bureaucratic standing expressed recently in Pennsylvania Gaming Control Bd. v. City Council of Philadelphia, 928 A.2d 1255, 1266 (Pa.2007) (recognizing standing of an administrative agency to seek to enjoin local ballot measure because allowing voters to express opinion allegedly would inconvenience the agency in execution of its statutory duties).
Nevertheless, I concur in the denial of ultimate relief because I believe that the trial court panel properly assessed the merits. Indeed, I concur in the panel's assessment that the Clerk's legal challenge is "frivolous, scarcely based in the law, and wholly without merit." Trial Ct. Op., 6/7/04, 1. Moreover, many of the points cited by the Majority in explaining why the Court denies appellant standing serve better to explain why appellant's merits position fails.
*11 Justice SAYLOR, concurring.
I join the majority opinion, subject to the understanding that Appellant lacks a substantial interest, and thus standing, because the challenged order does not directly interfere with his obligations as clerk of court. See generally 42 Pa.C.S. § 2757. To be more specific, although the majority observes that the clerk's duties are ministerial in nature, see Majority Opinion, Op. at ___ - ___, 936 A.2d at 9, this does not mean that the clerk has no role in construing any enactment, as he plainly must be able to understand his duties as set forth in Section 2757, or as otherwise imposed "by law, home rule charter, order or rule of court, or ordinance. . . ." 42 Pa.C.S. § 2757(5). Thus, if Appellant had been directed to take some action that blatantly and indisputably contradicted the lawful requirements of his office, I would likely find that his interest in the matter was substantial. Here, however, there is a more tenuous relationship between his legal obligations and the statute at issue (CHRIA). Indeed, under Section 9104(a)(2) of the Crimes Code, it appears that the scheme embodied in CHRIA Section 9122  on which Appellant relies, see Brief for Appellant at 18  does not apply to records maintained by the judiciary in the first instance. See 18 Pa.C.S. § 9104(a)(2) (stating that, with certain exceptions not applicable here, CHRIA does not apply to court records). In short, there is, at a minimum, substantial doubt whether expunction of the records in question is improper. See generally Commonwealth v. Armstrong, 495 Pa. 506, 513 n. 8, 434 A.2d 1205, 1209 n. 8 (1981); Pa. R.Crim.P. 320(A). Under these circumstances, I agree that Appellant's private interpretation to the contrary is insufficient to give him a substantial interest in refusing to comply with the order.
Justice EAKIN joins this concurring opinion.
Justice BALDWIN, concurring.
I join the Majority Opinion except to the extent that it determines that a clerk of courts is an officer of the Commonwealth, thus bringing the case within the original jurisdiction of the Commonwealth Court. The Majority finds that the Commonwealth Court has original jurisdiction over Troutman's appeal, pursuant to 42 Pa.C.S. § 761(a)(2), which provides "[t]he Commonwealth Court shall have original jurisdiction over all civil actions or proceedings . . . [b]y the Commonwealth Government, including any officer thereof, acting in his official capacity." This Court has repeatedly interpreted the term "officer of the Commonwealth" to mean "those who perform state-wide policymaking functions and who are charged with responsibility for independent initiation of administrative policy regarding some sovereign function of state government." Fawber v. Cohen, 516 Pa. 352, 356, 532 A.2d 429, 432 (1987) (citing Balshy v. Rank, 507 Pa. 384, 390, 490 A.2d 415, 417 (1985)).
As the Majority points out, the 1968 amendments to Pennsylvania's Constitution, creating a unified judicial system, provided, as to clerks and prothonotaries of courts:
Until otherwise provided by law, the offices of prothonotary and clerk of courts shall become the offices of prothonotary and clerk of courts of the court of common pleas of the judicial district, and in multi-county judicial districts of their county's branch of the court of common pleas, . . . and these officers shall continue to perform the duties of the office and to maintain and be responsible for the records, books and dockets as heretofore.
PA. CONST. Sched. 1968, § 15 (emphasis added). The Majority would interpret this *12 provision to mean that because the clerk is an officer of the court, he or she is an officer of the Commonwealth, silently overruling a long line of cases requiring "state-wide policymaking functions" and "responsibility for independent initiation of administrative policy," in order for a public official to be an officer of the Commonwealth. See, Fawber v. Cohen, supra, Balshy v. Rank, supra, Rhines v. Herzel, 481 Pa. 165, 169, 392 A.2d 298, 300-01 (1978), Bronson v. Cent. Office Review Comm., 554 Pa. 317, 322, 721 A.2d 357, 359 (1998). The clerk of courts is an administrative arm of the court, constitutionally responsible for keeping "the records, books and dockets" of the court. PA. CONST. Sched. 1968, § 15. This is neither state-wide policy making nor independent initiation of administrative policy. Any initiation of administrative policy is in relation to the clerk's administrative duty to maintain the documents related to the courts, nothing more.
Accordingly, I would find that the Commonwealth Court lacked jurisdiction to hear Troutman's appeal. Because I agree that Troutman lacked standing to bring this case, I would reach the same result as the Majority.
NOTES
[1] Troutman framed two issues:

(1) Whether the Commonwealth Court of Pennsylvania erred when it concluded that the Berks County Clerk of Courts James P. Troutman lacked standing to challenge Berks County Administrative Order No. 1-MD-2003 and quashed his appeal.
(2) Whether Berks County Administrative Order No. 1-MD-2003  which requires Berks County Clerk of Court James P. Troutman to comply under penalty of contempt with the expungement order requiring him to seal recordsis unlawful under the Pennsylvania Criminal History Record Information Act.
[2] In addition to commencing this case in this Court's appellate jurisdiction pursuant to our grant of allocatur, Troutman has also filed an Application for Leave to File Original Process in this Court and a Petition for a Writ of Prohibition. 181 MM 2005. These matters were placed on hold pending the disposition of this appeal. Due to our present disposition, the Application and Petition for a Writ of Prohibition are rendered moot. See footnote 3, infra.
[3] Having found that the Court of Common Pleas of Berks County had original jurisdiction over this matter and that the Commonwealth Court possessed appellate jurisdiction on appeal, we need not address Troutman's alternative, precautionary assertion, and the view held by the criminal defendants who completed ARD who were permitted to participate as amicus curiae, that our Court has original jurisdiction over this matter by way of a petition for writ of prohibition.
[4] A challenge to standing raises a question of law, therefore, "our standard of review is de novo, and our scope of review is plenary as we may examine the entire contents of the record." In re Hickson, 573 Pa. 127, 821 A.2d 1238, 1242 (2003).