J-A22009-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| THOMAS AND STACEY ANSELL; TRAVIS AND BRITTNI BAIR; BRITTNI CADAMORE N/K/A BRITTNI BAIR; DANIEL GARRIGAN; KEVIN KEENER AND SUZANNE PRICE; JOE AND CAITLIN KERN; SHAWN MOORE AND ROSE PARIS; LINDA SCHAFFER; DONALD J. VASIL., JR., VICTORIA CHRISTY | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br>No. 52 WDA 2024 |
| v. | : : : : : | |
| CHARAH SOLUTIONS, INC., CONTROLLED DEMOLITION INC., GRANT MACKAY COMPANY, CIVIL AND ENVIRONMENTAL CONSULTANTS, INC. | : : : : : : : : | |
| APPEAL OF: CHARAH SOLUTIONS, INC. | : : | |

Appeal from the Order Entered December 12, 2023
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  No. GD-23-10793

| | | |
|---|---|---|
| THOMAS AND STACEY ANSELL; TRAVIS AND BRITTNI BAIR; BRITTNI CADAMORE N/K/A BRITTNI BAIR; DANIEL CARRIGAN; THOMAS AND PATRICIA CARRIGAN; KEVIN KEENER AND SUZANNE PRICE; JOE AND CAITLIN KERN; SHAWN MOORE AND ROSE PARIS; LINDA SCHAFFER; DONALD J. VASIL, JR. AND VICTORIA CHRISTY | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br>No. 80 WDA 2024 |
| v. | : : : : : | |

CHARAH SOLUTIONS; CONTROLLED   :
DEMOLITION, INC.; GRANT MACKAY   :
COMPANY, INC.; CIVIL AND   :
ENVIRONMENTAL CONSULTANTS,   :
INC.   :
  :
  :
APPEAL OF: GRANT MACKAY   :
COMPANY, INC. AND CONTROLLED   :
DEMOLITION, INC.   :

Appeal from the Order Entered December 12, 2023
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-23-10793

BEFORE:  MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY MURRAY, J.:         **FILED: November 1, 2024**

Grant Mackay Company, Inc. (Grant Mackay), Charah Solutions (Charah), and Controlled Demolition, Inc. (CDI) (collectively, Appellants), appeal from the order entering a preliminary injunction against Appellants, and in favor of the plaintiffs, Thomas and Stacey Ansell, Travis and Brittni Bair, Brittni Cadamore n/k/a Brittni Bair, Daniel Carrigan, Thomas and Patricia Carrigan, Kevin Keener and Suzanne Price, Joe and Caitlin Kern, Shawn Moore and Rose Paris, Linda Schaffer, Donald J. Vasil, Jr., and Victoria Christy (collectively, Plaintiffs).[1]  The trial court's order preliminarily enjoined implosion of a boiler house at the former Cheswick Generating Station (Power

---

[1] A preliminary injunction, although interlocutory, is nevertheless immediately appealable as of right under Pa.R.A.P. 311(a)(4).

- 2 -

Plant). After careful review, we reverse the order entering a preliminary injunction against Appellants.

The trial court issued the following findings of fact:

The [] Power Plant was formerly a 565 MW coal-fired power station located in Springdale, Pennsylvania, and apparently, the only one in Allegheny County. (Compl. ¶ 15). On June 2, 2023, [Grant Mackay], the general contractor, and [CDI], the demolition subcontractor, imploded two (2) chimney stacks located at the [Power Plant], which is now owned by Charah [].[2] (Compl. ¶ 28). CDI was responsible for obtaining a Blasting Activity Permit from the Pennsylvania … Environmental Protection Agency (the "DEP"), designing and felling the chimneys, handling explosives, transporting explosives to the site, and felling the chimneys in the specified area. (H.T. Vol. VII at 20[3]).

Mark Loizeaux ("Mr. Loizeaux"), President of CDI, admitted that on June 2, 2023, the chimneys were imploded and although one (1) chimney fell as designed to fall, [implosion of] the 750' (the second) chimney created an air blast that damaged a tree, which fell into a power line, and projected dust and debris outside of the project site and into the surrounding residential neighborhood. (H.T. Vol. VII at 30). CDI recorded the seismic activity during the chimney stacks implosion and provided the recorded ground

_____

[2] In their brief, Charah asserts the following:

[Plaintiffs] incorrectly sued Charah. Cheswick Environmental Redevelopment Group, LLC, not Charah, is the owner of the [Power Plant] Site involved in this matter.

Appellant Charah's Brief at 6 n.1.

[3] As the trial court explained in its opinion,

all references to testimony ("H.T.") are to testimony taken intermittently from September 20, 2023[,] to November 15, 2023[,] at a preliminary injunction hearing….

Trial Court Opinion, 1/25/24, at 3 n.2.

- 3 -

vibration and air overpressure readings to the DEP. (H.T. Vol. VII at 35-36).

Mr. Loizeaux admitted that when the chimneys were imploded, they were expected to break apart forty percent (40%) of the way up, which creates an opening to vent air pressure, and the 750' chimney did not break apart; consequently, the air pressure was forced out the end of the chimney. (H.T. Vol. VII at 50-51)....

....

The June 2, 2023[,] demolition of the chimney stacks released dust, insulation, flyrock, and debris into the air, resulting in the formation of a cloud of dust, which included toxic … metals. (Compl. ¶ 29).

Trial Court Findings and Conclusions, 1/25/24, at 3-4 (footnotes added; paragraph designations omitted; formatting modified).

Following the chimney stacks' implosion, the DEP cited CDI for exceeding "permitted air blast limits," thereby causing flyrock and damage to private property and overhead utility lines. *Id.* at 4. As found by the trial court,

[t]his fugitive dust cloud traveled outward from the Power Plant property, into the homes and onto yards of the Plaintiffs and other residents surrounding the Power Plant in the Springdale Borough community. (Pl. Ex. 88, 89)[.] … It is undisputed that fugitive dust from the chimney implosions traversed the property of the Power Plant into the homes and onto the property of the Plaintiffs and other surrounding residents. (Pl. Ex. 88, 89). The Plaintiffs' expert, S. Thomas Dydek, Ph.D. ("Dr. Dydek"), testified that even after the dust visibly settled onto the ground and/or surfaces, invisible dust remained in the area further increasing the risk of harm. (H.T. Vol. IX at 201).

....

Following the implosion, clean-up methods [employed] may not have alleviated the risk. Individuals used leaf blowers and power

- 4 -

washers to remove dust from the surfaces on which it was visible. (H.T. Vol. VII at 139-140). Dr. Dydek testified that these methods re-distributed the dust throughout the community, and that the clean[-]up methods did not remove all the dust; the fact that dust may not have been visible in the days after the implosion did not necessarily eliminate the risk of harm from that dust. (H.T. Vol. IX at 201-206).

*Id.* at 5 (paragraph designations omitted; formatting modified). The trial court found that dust samples collected by Plaintiffs, from furniture inside their homes, had "RCRA metals," such as lead and arsenic. *Id.* at 6. In addition, "[m]ultiple individuals had eye injuries [and respiratory issues] occur … not only shortly after the implosion but continued thereafter …." *Id.* at 7 (paragraph designations omitted; formatting modified).

Relevant to the instant proceedings, on August 30, 2023, CDI applied to the DEP for a blasting permit to implode the Power Plant's boiler house.

> **On September 15, 2023, CDI was granted a second blasting permit by the DEP**, and the implosion of the boiler house was set for one (1) week later, on September 22, 2023. (Def. Ex. 3). Prior to receiving the blasting permit, [Appellants] weakened and partially loaded with explosives the boiler house structure, and these actions limited the available remedies by the parties and [the trial court]. (H.T. Vol. VII at 76-77).

*Id.* at 7 (emphasis added; paragraph designations omitted; formatting modified). **Plaintiffs filed no administrative appeal from the issuance of the permit.** *See* Trial Court Findings and Conclusions, 1/25/20, ¶ 28 (stating that after issuance of the blasting permit, Plaintiffs filed the instant injunctive action).

On September 15, 2023, Plaintiffs filed, in the common pleas court, a complaint in equity for injunctive relief (Complaint).[4] Plaintiffs sought to enjoin implosion of the boiler house and to restrain a public nuisance caused by the implosion. **See generally** Complaint, 9/15/23. On September 18, 2023, the trial court entered an order directing the parties to maintain the status quo, and scheduling a "hearing on [] Plaintiffs' Emergency Motion for Preliminary Injunction" for September 20, 2023.[5] Order, 9/18/23, at 1. The trial court conducted this hearing, over multiple days, from September 20, 2023, through November 15, 2023.

Relevantly, in their second amended complaint, Plaintiffs averred the DEP improperly issued a blasting permit because (a) blasting efforts at the Power Plant will cause substantial harm to Plaintiffs, **see** Second Amended Complaint, 10/18/23, ¶ 1; and (b) the blasting permit was issued in violation of the Sunshine Act, 65 Pa.C.S.A. § 701 *et seq.*. **Id.** ¶ 2. In their second amended complaint, Appellants claimed that Springdale Borough issued a building permit authorizing the demolition without a hearing, and without a determination of the proper fee by the Borough Council. **Id.** ¶ 14. Plaintiffs

_____

[4] Plaintiffs filed an amended complaint on September 18, 2023, and a second amended complaint on October 18, 2023.

[5] Although Plaintiffs filed a complaint in equity for an injunction, the trial court *sua sponte* considered the complaint as an "emergency motion" for a *preliminary* injunction. No emergency motion is of record.

asserted that the Borough's failure to comply with a statute requiring an open hearing constitutes irreparable harm. *Id.* ¶ 4.

On December 10, 2023, trial court entered an order granting Plaintiffs' emergency motion for a preliminary injunction and enjoining demolition of the Power Plant's boiler house. Trial Court Order, 12/10/23. The trial court's order directed, *inter alia*, the following:

> 1. [The trial court] find[s] that the Plaintiffs have met the six (6) elements required to issue a preliminary injunction as a matter of law.
>
> 2. The Parties are to meet and discuss a joint comprehensive safety plan for the implosion of the boiler house and attempt to reach an agreement within ten (10) days of this Order.
>
> 3. The joint comprehensive safety plan shall be submitted to the DEP and the [Allegheny County Health Department (ACHD)] for review and input, and the Parties shall request both the DEP and the ACHD to attend and participate in a public meeting.
>
> 4. The Plaintiffs shall request that the DEP condition the approval of the blasting permit on meeting all [] terms of the joint comprehensive safety plan, plus any and all terms that the Plaintiffs believe necessary to safely implode the boiler house.
>
> 5. The public meeting shall be held to provide the Plaintiffs and the residents with notice and the opportunity to be heard regarding the comprehensive safety plan.
>
> 6. Pursuant to Pa.R.C.P. 1531, upon submission of the joint comprehensive safety plan, plus any and all terms that the Plaintiffs believe necessary to implode the boiler house, and after the public meeting is held, the Parties shall Praecipe for a conciliation/hearing for [the trial court] to consider dissolution of the injunction.

*Id.* at 1-2. Appellants respectively filed timely appeals of the trial court's order. Appellants and the trial court have complied with Pa.R.A.P. 1925.

Appellant Charah presents the following issues for our review:

1.    Did the trial court lack jurisdiction over the preliminary injunction because [Plaintiffs] did not exhaust their administrative remedies, while collaterally attacking final actions by the [DEP] and the [ACHD]?

2.    Did the trial court err as a matter of law and on the record by usurping the statutory and regulatory authority granted to the DEP and ACHD?

3.    Did the trial court err as a matter of law by granting relief that exceeds the permissible scope and violates due process?

4.    Did the trial court err as a matter of law and on the record by granting the preliminary injunction while denying [Plaintiffs] relief on the merits?

5. Did the trial court err as a matter of law and on the record by misapplying the irreparable harm standard?

6.    Did the trial court err on the record by holding that the [Plaintiffs] established irreparable harm?

7.    Did the trial court err as a matter of law and on the record by relying on inadmissible evidence to conclude that asbestos "may still be present at the Power Plant"?

8. Did the trial court err as a matter of law and abuse its discretion by setting an insufficient preliminary injunction bond [of]$50,000?

Appellant Charah's Brief at 1 (some capitalization modified).

Appellant Grant Mackay, joined by CDI, presents the following issues:

A.    Whether the trial court erred in violating the agency autonomy of and collaterally attacking the regulatory agency autonomy of both the [DEP] and the [ACHD]?

B.    Whether the trial court abused its discretion and misapplied the applicable legal standard by issuing a preliminary injunction that lacked any apparently reasonable grounds to satisfy the requirements set forth in *Warehime v. Warehime*, 860 A.2d 41 (Pa. 2004)?

C.    Whether the trial court erred in exceeding the relief requested by the Plaintiffs?

D.    Whether the order of court entered by the trial court is unenforceable in that it is not reasonably clear, unambiguous, or sufficiently certain, and that the trial court essentially directed the parties to resolve the case by entertaining any and all conditions requested by the Plaintiffs and their experts, presenting the conditions to the [DEP] and the [ACHD] for conditional approval, holding a public meeting, and then returning to the [trial c]ourt for conciliation/hearing?

E.    Whether any of the findings of fact on which the trial court relied lacked any apparently reasonable grounds[?]

Appellant Grant Mackay's Brief (joined by CDI) at 3-5 (issues reordered; some capitalization modified).

All Appellants challenge the jurisdiction of the trial court to preliminarily enjoin blasting activity at the Power Plant.  Appellant Charah's Brief at 15; Appellant Grant Mackay's Brief  at 19.  The question of subject matter jurisdiction is one which may be raised at any time and one over which we exercise *de novo* and plenary review.  ***In re Admin. Ord. No. 1-MD-2003***, 936 A.2d 1, 5 (Pa. 2007).

Charah claims Plaintiffs "based their request for a preliminary injunction largely on attacks against allowing the DEP's and ACHD's permitting and clearance processes."  Appellant Charah's Brief at 15.  Charah argues that, "[b]y failing to exhaust administrative remedies available to them, [Plaintiffs] deprived any court of jurisdiction over their demand for a preliminary

injunction." *Id.* Charah claims Plaintiffs are collaterally attacking the permitting and clearance processes of administrative agencies. *Id.* at 16.

Charah points out the trial court ordered Plaintiffs to exhaust their administrative remedies, by submitting a comprehensive plan to DEP and ACHD for review. *Id.* at 17. Appellants argue,

> [i]f [Appellants] wished to challenge the issuance of the blasting permit for the boiler house, they were required to do so before the [Environmental Hearing Board (]EHB[)] … (35 [P.S.] § 7511 *et seq*. (1989)), which "has the power and duty to hold hearings and issue adjudications … on orders, permits, licenses or decisions of the" DEP. 35 [P.S.] § 7514(a). Plaintiffs were aware of the issuance of the blasting permit on September 15, 2023 (one[] week before the scheduled implosion), … and the administrative remedies available to them before the EHB based on the appeal paragraph included in the blasting permit itself.

*Id.* at 18 (some punctuation modified).

Grant Mackay similarly argues "the Pennsylvania Legislature has statutorily conferred upon the DEP the responsibility and authority to regulate blasting in this Commonwealth through the Administrative Code of 1929, 71 P.S. § 510-17." Appellant Grant Mackay's Brief at 19. Grant Mackay points out there is no dispute that DEP issued a Blasting Activity Permit. *Id.* at 20. According to Grant Mackay, representatives from DEP testified at the hearing that the permit was properly issued in accordance with the Administrative Code. *Id.*

Grant Mackay argues that there is an adequate administrative remedy available to Plaintiffs. *Id.* Grant Mackay points out that the blasting permit, itself, provided that

> [a]ny person aggrieved by this action may appeal the action to the [EHB], pursuant to Section 4 of the [EHB] Act, 35 P.S. § 7514, and the Administrative Agency Law, 2 Pa.C.S.[A.] Chapter 5A.

*Id.* at 20-21. According to Grant Mackay, the EHB is empowered to issue a supersedeas based upon consideration of whether irreparable harm or likely injury to the public may result. *Id.* at 21 (citing 35 P.S. § 7514(d)(1)).

Plaintiffs counter that administrative remedies would not have protected against the potential harm alleged. Plaintiffs' Brief (Charah) at 36. Plaintiffs contend that "[a]nything to do with dust or air quality fell outside" of the jurisdiction of the DEP. *Id.* Plaintiffs acknowledge testimony that ACHD has "purview over air quality [in Allegheny County], and ACHD would issue a letter indicating that it approved the dust mitigation control plan submitted by [Grant Mackay]." *Id.* However, Plaintiffs argue the witness from ACHD was unaware of what information is considered by ACHD in approving a dust plan. *Id.* Plaintiffs further argue that ACHD does not analyze the dust being released from a demolition, as the ACHD focuses solely on asbestos. *Id.* at 37. Plaintiffs thus argue that challenging either the blasting permit or ACHD's asbestos clearance documentation would serve no purpose. *Id.*

Plaintiffs also assert that the administrative process does not supplant injunctive relief. *Id.* at 38. They claim that even where a permit is issued, a party may still file for injunctive relief should the use of that permit cause a nuisance (or other damage). *Id.* (citing ***Machipongo Land & Coal Co. Inc. v. DEP***, 799 A.2d 751 (Pa. 2002) (***Machipongo***)). Plaintiffs' Brief (Charah)

at 39.  Plaintiffs argue they "did not seek to challenge the permits, [and] were not required to do so[.]"  *Id.* at 40.

Initially, we must address whether the trial court had jurisdiction to issue a preliminary injunction.

> "It is fundamental that prior to resorting to judicial remedies, litigants must exhaust all the adequate and available administrative remedies which the legislature has provided."  **Cnty. of Berks ex rel. Baldwin v. Pa. Labor Rels. Bd.**, … 678 A.2d 355, 360 (Pa. 1996); **see also Dep't of Pub. Welfare v. Eisenberg**…, … 454 A.2d 513, 514-15 (Pa. 1982) ("Where injunctive relief is sought, our initial focus should be on the threshold question regarding whether equity jurisdiction is appropriate.  That equity will not intervene where there is available an adequate statutorily prescribed remedy at law[] is a principle well established in this Commonwealth.").  The exhaustion
>
> > doctrine is a court-made rule intended to prevent premature judicial intervention into the administrative process.  A court is [t]o defer judicial review where the question presented is one within an agency specialization and where the administrative remedy is likely to produce the desired result.  The doctrine operates as a restraint on the exercise of a court's equitable powers and a recognition of the legislature's direction to comply with statutorily-prescribed remedies.
>
> **Empire Sanitary Landfill, Inc. v. Dep't of Env't Res.**, … 684 A.2d 1047, 1053 (Pa. 1996) (alteration in original) (citations and internal quotation marks omitted).  Nonetheless, the exhaustion doctrine is not absolute.  **Feingold v. Bell of Pa.**, … 383 A.2d 791, 793 (Pa. 1977).

**Glenn O. Hawbaker, Inc. v. Commonwealth DOT**, 304 A.3d 1067, 1081 (Pa. 2023).  The purposes of this exhaustion requirement are to prevent premature judicial intervention in the administrative process; and to ensure that claims will be addressed by the body with expertise in the area.  **Lehman**

*v. Pennsylvania State Police*, 839 A.2d 265, 275 (Pa. 2003); *Empire Sanitary Landfill*, 684 A.2d at 1053.

> There are three exceptions to the exhaustion doctrine:
>
> The first exception is where the jurisdiction of an agency is challenged. The second exception is where the constitutionality of a statutory scheme or its validity is challenged. The third exception is where the legal or equitable remedies are unavailable or inadequate, or the administrative agency is unable to provide the requested relief. Under the third exception, even though an administrative agency may not have jurisdiction over all constitutional issues raised by a litigant, the litigant must first exhaust its administrative remedies where there is no separate allegation that the available statutory remedy is inadequate.

*Empire Sanitary Landfill*, 684 A.2d at 1054 (citations omitted).

An administrative "remedy is inadequate if it either (1) does not allow for adjudication of the issue raised … [,] or (2) allows irreparable harm to occur to the plaintiffs during the pursuit of the statutory remedy." *Commonwealth ex rel. Nicholas v. Pa. Labor Rels. Bd.*, 681 A.2d 157, 161 (Pa. 1996).

> It is true an administrative remedy is considered inadequate if the plaintiff makes a clear showing that it would suffer irreparable injury during pursuit of that remedy. **However, where an administrative process exists to resolve a dispute,** … **a court of equity is not justified in exercising jurisdiction solely on the basis that it may reach a more expeditious resolution.**

*Rehab. & Cmty. Providers Ass'n v. Dep't of Hum. Servs. Off. of Dev. Programs*, 283 A.3d 260, 271 (Pa. 2022) (citations omitted; emphasis added).

We observe that by statute, the DEP is vested with authority to abate nuisances in Pennsylvania. 71 P.S. § 510-17. Specifically, the DEP has the power and duty

**(1)** To protect the people of this Commonwealth from unsanitary conditions and other nuisances, including any condition which is declared to be a nuisance by any law administered by the department;

**(2)** To cause examination to be made of nuisances, or questions affecting the security of life and health, in any locality, and, for that purpose, without fee or hinderance, to enter, examine and survey all grounds, vehicles, apartments, buildings, and places, within the Commonwealth, and all persons, authorized by the department to enter, examine and survey such grounds, vehicles, apartments, buildings and places, shall have the powers and authority conferred by law upon constables;

**(3)** To order such nuisances including those detrimental to the public health to be abated and removed;

**(4)** If the owner or occupant of any premises, whereon any such nuisance fails to comply with any order of the department for the abatement or removal thereof, to enter upon the premises, to which such order relates, and abate or remove such nuisance;

**(5)** For the purpose of collecting or recovering the expense of the abatement or removal of a nuisance, to file a claim, or maintain an action, in such manner as may now or hereafter be provided by law, against the owner or occupant of the premises upon or from which such nuisance shall have been abated or removed by the department;

**(6)** In making examinations as authorized by this section, the [DEP] shall cooperate with the Department of Health, for the purpose of avoiding any duplication of inspection or overlapping of functions.

71 P.S. § 510-17.

The DEP is statutorily vested with authority over blasting activities in Pennsylvania:

> DEP did not always have enforcement authority for Blasting Act violations; in fact, when the Blasting Act became law on July 10, 1957, the Department of Labor and Industry [] was charged with administering it. Then, in 1981, the General Assembly shifted this authority to the Department of Environmental Resources, which has since been re-named DEP.

*Commonwealth v. Marks Contr., Ltd.*, 850 A.2d 873, 875 (Pa. Cmwlth. 2004) (footnotes omitted).

The Blasting Act has not been amended since the 1981 transfer of powers and duties. It contains only five sections: a definition section, 73 P.S. § 164; a section dealing with examination and licensing of blasters, *see id.* § 165; a provision requiring that blasting operations be conducted in accordance with regulations, *see id.* § 166; a provision authorizing DEP to promulgate rules and regulations to effectuate the Act, *see id.* § 167; and a penalties section, *see id.* § 168.

Relevantly, Section 166 (Blasting operations conducted in accordance with regulations) provides as follows:

> **(a) The use of explosives for the purpose of blasting** in the neighborhood of any public highway, stream of water, **dwelling house**, public building, school, church, commercial or institutional building, or pipe line, **shall be done in accordance with the provisions of this section, and rules and regulations promulgated by the** [**DEP**]**.**

73 P.S. § 166(a) (emphasis added). The Pennsylvania Code provides that, "a person may not engage in blasting activities in this Commonwealth **without**

**first obtaining the appropriate permit** from [DEP] issued under this chapter." 25 Pa. Code § 211.121(a) (emphasis added).

"The EHB has the jurisdiction to hear appeals of actions of the [DEP.]" *Empire Sanitary Landfill*, 684 A.2d at 1053 (citing 35 P.S. § 7514(2)). Section 7514 defines the powers and duties of the EHB:

> **(a) GENERAL RULE.—** The [EHB] has the power and duty to hold hearings and issue adjudications under 2 Pa.C.S.[A.] Ch. 5 Subch. A (relating to practice and procedure of Commonwealth agencies) on orders, permits, licenses or decisions of [DEP].

> **(b) POWERS CONTINUED.—** The [EHB] shall continue to exercise the powers to hold hearings and issue adjudications which (powers) were vested in agencies listed in section 1901-A of the act of April 9, 1929 (P.L. 177, No. 175), known as The Administrative Code of 1929.

> **(c) DEPARTMENTAL ACTION.—** The [DEP] may take an action initially without regard to 2 Pa.C.S.[A.] Ch. 5 Subch. A, but no action of the [DEP] adversely affecting a person shall be final as to that person until the person has had the opportunity to appeal the action to the [EHB] under subsection (g). If a person has not perfected an appeal in accordance with the regulations of the board, the [DEP's] action shall be final as to the person.

> **(d) SUPERSEDEAS.—**

> > **(1)** No appeal shall act as an automatic supersedeas. **The [EHB] may, however, grant a supersedeas upon cause shown.** The [EHB], in granting or denying a supersedeas, shall be guided by relevant judicial precedent and the board's own precedent. Among the factors to be considered are:

> > > **(i) Irreparable harm to the petitioner.**

> > > (ii) The likelihood of the petitioner prevailing on the merits.

> > > **(iii) The likelihood of injury to the public or other parties, such as the permittee in third party appeals.**

**(2)** A supersedeas shall not be issued in cases where pollution or injury to the public health, safety or welfare exists or is threatened during the period when the supersedeas would be in effect.

**(3)** The board shall promulgate regulations for issuance or denial of a temporary supersedeas.

**(e) INTERVENTION.— Any interested party may intervene in any matter pending before the** [**EHB**].

….

**(h) VOLUNTARY MEDIATION.—** Subject to [EHB] approval, parties to any proceeding may request permission to utilize voluntary mediation services to resolve the dispute or narrow the areas of difference. If the [EHB] approves, the hearing shall be continued until the parties report the results of the mediation. If the parties accept the mediation report and the result is consistent with State and Federal environmental laws, then the [EHB] may enter the settlement as its decision. If mediation is unsuccessful, then the hearing shall be rescheduled and conducted in accordance with the provisions of law.

35 P.S. § 7514(a)-(e), (h) (emphasis added).

Plaintiffs further could have appealed any determination by the DEP directly to the Commonwealth Court:

As concerns a right of appeal from agency adjudications, the Administrative Agency Law provides that "[a]ny person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals."[FN] 2 Pa.C.S.A. § 702. Pertinent here, the Commonwealth Court has "exclusive jurisdiction of appeals from final orders of government agencies," including "[a]ll appeals from Commonwealth agencies under Subchapter A of Chapter 7 of Title 2 (relating to judicial review of Commonwealth agency action)." 42 Pa.C.S.[A.] § 763(a)(1)….

- 17 -

[FN] An "[a]djudication" is defined for purposes of the Administrative Agency Law as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." 2 Pa.C.S.[A.] § 101.

**Glenn O. Hawbaker**, 304 A.3d at 1087 (footnote in original).

Thus, Plaintiffs had an adequate statutory remedy available from the DEP's issuance of the blasting permit. The administrative appeal process afforded Plaintiffs the opportunity for mediation, as well as an opportunity to apply for a supersedeas during any appeal. **See** 35 P.S. § 7514(d)(1)(i), (h).

Similarly, the ACHD Code afforded Plaintiffs an administrative remedy. The ACHD Code provides:

**§2101.11  PROHIBITION OF AIR POLLUTION**

a. It shall be a violation of this Article to fail to comply with, or to cause or assist in the violation of, any requirement of this Article, or any order or permit issued pursuant to authority granted by this Article. No person shall willfully, negligently, or through the failure to provide and operate necessary control equipment or to take necessary precautions, operate any source of air contaminants in such manner that emissions from such source:

   1. Exceed the amounts permitted by this Article or by any order or permit issued pursuant to this Article;

   2. Cause an exceedance of the ambient air quality standards established by §2101.10 of this Article; or

   3. May reasonably be anticipated to endanger the public health, safety, or welfare.

b. It shall be a violation of this Article for any person to:

1. Operate, or allow to be operated, any source in such manner as to allow the release of air contaminants into the open air or to cause air pollution as defined in this Article, except as is explicitly permitted by this Article;

….

c. It shall be a violation of this Article for any person to cause a public nuisance, or to cause air, soil, or water pollution resulting from any air pollution emission.…

ACHD Code § 2101.11. The ACHD Code provides, "[a]ny violation of this Article shall constitute a nuisance." *Id.* § 2010.13.

The Article XXI of the ACHD Code provides an appeal process for the grant or denial of a permit issued by the ACHD:

1. Any person who is aggrieved by the denial or rejection of a permit application or revocation of a permit required by this Article, or the issuance or reissuance of such permit with conditions, or any person who participated in the public comment process for a permit, shall have the right to file an appeal pursuant to the provisions of Article XI, Rules and Regulations of the Allegheny County Health Department, or in accordance with such other procedures as may hereafter be established by the Board of County Commissioners.

2. In all such cases involving the provisions of this Part, a hearing granted pursuant to this Subsection:

….

B. Shall be held before a Hearing Officer who represents the public interest and does not derive any significant portion of his income from persons subject to this Article within the meaning in Part A of this Article; except that, if a panel of three (3) or more persons is appointed to hear the case, a majority of the panel shall represent the public interest and shall not derive any significant portion of his income from persons subject to this Article. Prior to being appointed as a Hearing Officer, each proposed appointee shall file with the Chief Clerk

> of the County of Allegheny a Disclosure Statement as required by Part I of this Article. Said Disclosure Statement shall be subject to the public inspection provisions of Part I.
>
> 3. In any such administrative hearing, the person filing the appeal shall bear the burden of proof and the burden of going forward with respect to all issues.

ACHD Code § 2102.03(h). In the event Plaintiffs disagreed with the ACHD's determination, they could file an appeal to the common pleas court,[6] and a subsequent appeal to the Commonwealth Court. *See* 42 Pa.C.S.A. § 763. Thus, the ACHD afforded Plaintiffs an administrative remedy for the issuance of a permit under its provisions.

We further observe that Plaintiffs failed to appeal Springdale Borough's issuance of a permit. *See* Sprindale Borough Code § 225-4 (Board of Appeals). Plaintiffs could have appealed the issuance of the permit, or challenged the violation of the Sunshine Act, through an appeal to the common pleas court. *See* n.5 *supra*. Instead, they circumvented the administrative process through an equity action.

Our Supreme Court has recognized that an "unjustified failure to follow the administrative scheme undercuts the foundation upon which the administrative process was founded." *Shenango Valley Osteopathic Hosp.*

---

[6] *See* 2 Pa.C.S.A. § 752 ("Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure.)"); 42 Pa.C.S.A. § 933(a)(2) (relating to jurisdiction of common pleas courts over appeals from government agencies except Commonwealth agencies).

***v. Dep't of Health***, 451 A.2d 434, 438 (Pa. 1982).  The "premature interruption of the administrative process restricts the agency's opportunity to develop an adequate factual record, limits the agency in the exercise of its expertise and impedes the development of a cohesive body of law in that area."  ***Id.***  "It is therefore clearly appropriate to defer judicial review when the question presented is one within the agency's specialization and when the administrative remedy is as likely as the judicial remedy to provide the desired result."  ***Id.***

Although Plaintiffs cite our Supreme Court's decision ***Machipongo***, we conclude their reliance is misplaced.  Plaintiffs argue,

> [t]he Supreme Court has previously held that even where a permit is validly issued by the DEP, a party may still file for injunctive relief should the use of that permit cause a nuisance (or other damage).  ***Machipongo*** …, 799 A.2d 751….

Plaintiffs' Brief at 38.  In ***Machipongo***, however, the Supreme Court was asked to address a situation wherein property owners (Property Owners) claimed a regulation effectuated a taking of their property, as it banned their coal mining operations.  ***Machipongo***, 799 A.2d at 755.  The ***Machipongo*** Court observed, that, in addressing the issue of a taking, the Commonwealth Court had

> recited factors that the U.S. Supreme Court has identified as relevant to the determination of whether a categorical taking had occurred:
>
> whether the public interest requires regulatory interference with the property right;

whether the regulation is reasonably related to that goal;

whether the amount of property taken deprives an owner of all economical viable uses of the property, measured by what is taken (the numerator) against what was left (the denominator); [and]

whether the property owner's actions or proposed actions would cause a nuisance.

*Id.* at 759 (citation omitted).

The Supreme Court ultimately remanded to the Commonwealth Court to consider whether the proposed use, *i.e.*, mining, would pollute water, thereby constituting a nuisance under the Clean Streams Act, 35 P.S. § 691.3:

[The Supreme Court] remand[s] this case to the Commonwealth Court to consider evidence that the proposed use would constitute a nuisance. If, after a factual inquiry that court determines that the Property Owners' activities would unreasonably interfere with the public right to unpolluted water, the ruling of the court based upon decisions of this Court and the U.S. Supreme Court should be clear. **The government is not required to pay Property Owners to refrain from taking action on their land that would have the effect of polluting public waters.** Indeed, despite our conviction that private property rights are to be strongly protected, we are struck by the impropriety of taking action that would require the General Assembly to pay someone not to pollute public water or destroy public fisheries.

*Id.* at 775 (emphasis added).

Here, by contrast, Plaintiffs asked the trial court to enjoin blasting, an activity expressly regulated by statute and regulations. Plaintiffs asked the trial court to invoke its equitable jurisdiction, without exhausting their administrative remedies. We conclude this failure deprived the trial court of equitable jurisdiction to issue a preliminary injunction. The EHB Act provides an appropriate remedy, which includes a supersedeas to protect against

- 22 -

irreparable harm. The ACHD Code likewise affords an administrative remedy for the alleged harm.

> As a rule, where an adequate administrative process is available, a party may not forgo that process in favor of seeking judicial relief. ***Bayada Nurses, Inc. v. Com., Dep't of Labor and Indus.***, … 8 A.3d 866, 875 (Pa. 2010); ***Empire Sanitary Landfill, Inc. v. Commonwealth, Dep't of Envtl. Res.***, … 684 A.2d 1047, 1053 (Pa. 1996). Instead, the party must first exhaust its administrative remedies before proceeding to court….

***SEPTA v. City of Philadelphia***, 101 A.3d 79, 90 (Pa. 2014).

In addition, **the trial court's order, itself, directed Plaintiffs to pursue their administrative remedies** before the appropriate administrative tribunals. As stated above, the trial court ordered the parties to submit a comprehensive plan to the DEP and ACHD for review and input. Trial Court Order, 12/10/23, ¶ 3. The trial court directed Plaintiffs to "request that the DEP condition approval" of any permit on a joint comprehensive plan developed by the parties. ***Id.*** ¶ 4. The trial court did not direct the DEP to accept the comprehensive plan.

We further observe that the trial court's retention of jurisdiction, following the exhaustion of Plaintiffs' administrative remedies, is problematic. The trial court apparently would review the agencies' respective determinations following their consideration of the joint comprehensive plan and their ultimate resolution of Plaintiffs' assertions. Review of DEP's determinations, however, is within the exclusive jurisdiction of the Commonwealth Court. ***See*** 42 Pa.C.S.A. § 763.

For the forgoing reasons, we conclude the trial court erred in exercising its equitable jurisdiction and granting Plaintiffs' request for a preliminary injunction. Accordingly, we reverse the trial court's order granting a preliminary injunction against Appellants.

Order reversed. Superior Court jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/01/2024